**UNITED STATES of America**

v.

**Bruce BROWN et al.**

**Appeal of Eric REDDING.**

**No. 76–1596.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) Oct. 21, 1976.

Decided Dec. 20, 1976.

Blair A. Griffith, U. S. Atty., Craig R. McKay, Judith K. Giltenboth, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.

Theodore S. Hopkins, Asst. Federal Public Defender, Pittsburgh, Pa., for appellant, Eric Redding.

Submitted Under Third Circuit Rule
12(6) Oct. 21, 1976.

Before ALDISERT and GIBBONS, Circuit Judges, and McGlynn,* District Judge.

---

* Joseph L. McGlynn, Jr. of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Appellant, Eric Redding, appeals from a judgment of conviction for bank robbery, in violation of 18 U.S.C. § 2113(a) and (d).[1] Appellant raises several issues, none of which is adequate to command reversal. Two of these issues, because they are likely to recur in other cases, warrant discussion.[2]

### I.

The first issue involves an interpretation of Fed.R.Evid. 615 which relates to the sequestration of witnesses. After appellant's jury had been sworn but prior to the opening statements of either counsel, appellant's counsel requested, and the court ruled:

> Appellant's Counsel: Your Honor, at this time I would request that the witnesses be sequestered prior to the time that Mr. McKay [the prosecutor] might make an opening statement to the jury.
>
> The Court: Well, ordinarily we don't observe that practice unless there are some special reasons, so the motion is denied.

Appellant contends that this ruling violated Fed.R.Evid. 615, which reads:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

The advisory notes to Rule 615 read in part:

> The authority of the judge [to sequester witnesses] is admitted, the only question being whether the matter is committed to his discretion or one of right. This

rule takes the latter position. No time is specified for making this request.

■ We do not dispute that a party may request as of right that witness be excluded prior to the time that any opportunity exists for them to hear the testimony of other witnesses. We do not, however, construe a party's request for the exclusion of witnesses prior to opposing counsel's opening statement to be within the purview of Rule 615. Rule 615 relates exclusively to the time testimony is being given by other witnesses. Its language is clear and unambiguous: "the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." Even such a strong advocate of mandatory sequestration as Professor Wigmore[3] was of the view that the sequestration of witnesses was not appropriate during the opening statement of counsel.

> "The *time* for sequestration begins with the delivery of testimony upon the stand and ends with the close of testimony.
>
> It is therefore not appropriate during the reading of the pleadings or the opening address of counsel  . . . ."

6 Wigmore § 1840.

■ Admittedly, there may exist a danger of improper suggestions to witnesses during counsel's opening statement, but that danger is not dealt with in Rule 615. The decision as to whether witnesses should be excluded prior to counsel's opening statement is committed to the discretion of the district court. Since appellant made no attempt to inform the district court why failure to exclude witnesses during the prosecutor's opening statement might prejudice appellant's case, we cannot say that the court abused its discretion in denying the motion.

■ Nor can we accept appellant's argument that the district court erred by failing to sequester the witnesses after the opening

---

1. See note 5 *infra.*

2. Appellant's other contentions involve the adequacy of the district court's insanity charge, and the fairness of appellant's sentence when compared with that of a co-defendant who

elected to plead guilty and received a lighter sentence. On the record before us these contentions are without merit.

3. *See* 6 Wigmore § 1839.

statement of counsel. Appellant made only one sequestration motion, and this motion specifically mentioned only the exclusion of witnesses prior to the prosecutor's opening statement. The district court was under no obligation to interpret this motion as a request for the sequestration of witnesses both before and after the opening statements of counsel. The advisory notes to Rule 615 state that "no time is specified for making the [Rule 615] request." This language, however, must be interpreted in light of the limited purpose of Rule 615. The purpose of this rule is to prevent witnesses from hearing the testimony of other witnesses. Appellant's motion was premature since no such possibility existed during the opening statement of counsel. If appellant desired sequestration after counsel's opening statement, he should have renewed the motion at the time the witnesses were to testify.[4] In rejecting appellant's contention we do not suggest any watering down of the mandatory language of Rule 615. For the guidance of the bar we do suggest that when such motions are made in a context where counsel's desires may be ambiguous, a greater level of specificity is advisable.

4. It is understandable that in this case the trial court did not interpret appellant's sequestration motion as a general request for the sequestration of all witnesses during the entire trial. There was no serious dispute that appellant had participated in the bank robbery. His principal defense was insanity. In such a case it was highly probable that defense counsel would not want the witnesses, especially expert witnesses, excluded. Often, when a defendant's sanity is in issue, expert witnesses will base their opinion not only on clinical observations of the defendant, but also on the facts developed in the evidence. Such was the case in appellant's trial, where the psychiatrist who testified on appellant's behalf based his opinion in part on observations made during the course of the trial. It is a distinct possibility that defense counsel did not make another sequestration motion once the witnesses began to testify for fear that such a motion might result in the exclusion of his expert witnesses.

5. 18 U.S.C. § 2113(a) and (d) provide:
    (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any prop-

## II.

The second issue is whether the district court erred in failing to instruct the jury that specific intent is an essential element of a violation of 18 U.S.C. § 2113(a) (first paragraph) and (d),[5] Appellant relies on *United States v. Howard*, 506 F.2d 1131, 1133 (2d Cir. 1974), in support of his argument that specific intent is an essential element of such a violation. On this issue the Second Circuit is in the minority. We choose, instead, to align ourselves with the First and Ninth Circuits which have held that specific intent is not an essential element of a violation of § 2113(a) (first paragraph) and (d). *United States v. DeLeo*, 422 F.2d 487, 490–91 (1st Cir.), *cert. denied*, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970); *United States v. Hartfield*, 513 F.2d 254, 259 (9th Cir. 1975); *United States v. Porter*, 431 F.2d 7, 9–10 (9th Cir.), *cert. denied*, 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970). *See also United States v. Lester*, 287 F.Supp. 870 (E.D.Pa.1967), aff'd 399 F.2d 161 (3d Cir. 1968). In so holding we rely on Judge Coffin's excellent statutory analysis of § 2113(a) and (d) in *DeLeo, supra*:

erty or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; or

Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

\* \* \* \* \* \*

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

The offense described in the first paragraph of section 2113(a)—"analogous" to common law robbery, *Prince v. United States*, 352 U.S. 322, 324, 77 S.Ct. 403, 1 L.Ed.2d 370 n. 2 (1957), or "in the nature of robbery", *Rawls v. United States*, 162 F.2d 798, 799 (10th Cir. 1947)—is part of the statutory pattern to protect institutions whose deposits are federally insured. Six specific crimes are set out in section 2113. Felonious intent is specifically incorporated in the definition of two of them: entering a federally insured institution with intent to commit a felony (a—second paragraph), and taking property with intent to steal or purloin (b). However, it is not made part of the crimes of taking by force and violence or by intimidation (a—first paragraph); knowingly receiving stolen property (c); assaulting or putting in jeopardy the life of a person by a dangerous weapon (d); or killing a person, or forcing a person to accompany him, while in the course of committing one of the other offenses or avoiding apprehension or confinement for any of them (e).

■ This differentiation shows careful draftsmanship. Entering and taking can be innocent acts, and therefore require felonious intent to constitute crimes[2];

[2] As the Court stated in *Prince v. United States*, 352 U.S. 322, 328, 77 S.Ct. 403, 407, 1 L.Ed.2d 370 (1957): "The gravamen of the offense is not in the act of entering, which satisfies the terms of the statute even if it is simply walking through an open, public door during normal business hours [footnote omitted]. Rather the heart of the crime is the intent to steal."

Moreover, taking seemingly abandoned property from a government bombing range in the hinterland, *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), or taking one's property from customs control and custody, thinking that the necessary papers had been completed. *Hughes v. United States*, 338 U.S. 651 (1st Cir. 1964), rehearing denied, 340 F.2d 609 (1965), are not criminal in the absence of felonious intent.

The frequent citation of *Morissette* and *Hughes*, as boiler-plate mandates for allegations or proof of specific felonious intent in all sorts of irrelevant situations evidences either a widespread misunderstanding of the narrow questions there involved or the adherence of

the bar to the principle that hope endureth forever.

receiving stolen property can be innocent, unless done knowingly. However, the other offenses describe acts which, when performed, are so unambiguously dangerous to others that the requisite mental element is necessarily implicit in the description.[3] *Contra: United States v.*

[8] We are fortified in our view by the approving reference of the Court in *Prince v. United States, supra* 352 U.S. at 326, 77 S.Ct. at 405, to the language of the Attorney General in his letter proposing amendments in 1937 to the Bank Robbery Act. He cited the anomalous case, then beyond the reach of the Act, of a man who had succeeded in gaining possession of the bank's funds during the absence of an employee and "without displaying any force or violence and without putting anyone in fear—necessary elements of the crime of robbery * * *." While the Attorney General did not say these were all the elements of the federal crime of robbery described in section 2113(a), we think that all were specified in his example: the taking of funds in the custody of a federally insured bank, the use of force or violence, or intimidation, in the presence of some person.

See also *Portnoy v. United States*, 316 F.2d 486 (1st Cir. 1963), cert. denied, 375 U.S. 815, 84 S.Ct. 48, 11 L.Ed.2d 50 (1963), in which we upheld an indictment where the allegation of the requisite mental element was implicit in the indictment.

*Margeson*, Cr. No. 64–26 (D.Me.1964). It therefore is immaterial for sections 2113(a) and (d) whether the subjective intent of a bank robber is to steal that to which he has no claim or to recover his own deposit; the crime is his resort to force and violence, or intimidation, in the presence of another person to accomplish his purposes. *United States v. Lester*, 287 F.Supp. 870 (E.D.Pa.1967), aff'd. 399 F.2d 161 (3d Cir. 1968); *Pitman v. United States*, 380 F.2d 368 (9th Cir. 1967).

422 F.2d at 490–91.

The district court did not err in refusing to instruct the jury that specific intent was an essential element of an offense under § 2113(a) (first paragraph) and (d).

### III.

The judgment of the district court will be affirmed.