**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Stanley CAMPBELL, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Riley Ray FULTZ, Defendant-Appellant.**

**Nos. 79–5412 to 79–5414.**

United States Court of Appeals, Sixth Circuit.

Argued April 13, 1981.

Decided April 16, 1982.

---

John Stanley Campbell, pro se.

Frances Lee Ansley, Dean Hill Rivkin, Knoxville, Tenn. (court appointed), argued, for defendant-appellant Campbell.

Riley Ray Fultz, pro se.

David E. Melcher, Cynthiana, Ky. (court appointed), argued, for defendant-appellant Fultz.

W. J. Michael Cody, U.S. Atty., Robert M. Williams, Jr., Asst. U.S. Atty., Memphis, Tenn., argued, for plaintiff-appellee.

Before EDWARDS, Chief Judge, MARTIN, Circuit Judge, and ENSLEN,* District Judge.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge.

Appellants Campbell and Fultz appeal after convictions in separate trials wherein each was found guilty and sentenced for two offenses of armed bank robbery. The first indictment had charged them with armed robbery of the City National Bank of Memphis, Tennessee, on December 1, 1978, in violation of 18 U.S.C. § 2113(d) (1976). Subsequently another indictment charged them with armed robbery of the same bank on January 12, 1979.

---

* Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation.

Both defendants rely upon the same two issues. As to the first, concerning right to counsel, we find no error. Appellants individually and together repeatedly demanded the right to try the case themselves. In addition, they sought to have counsel furnished to them as an advisor. The trial judge granted this motion, and an Assistant Federal Defender, Stephen B. Shankman, was appointed in that role. When it became apparent that Campbell's defense might conflict with Fultz's, the trials were severed, and the trial judge offered to appoint someone else to represent Fultz. This offer was not accepted. Ultimately both defendants filed a motion asking that Shankman be relieved as their legal advisor, and Shankman in turn filed a motion to withdraw. Thereupon the court relieved Shankman but declined to appoint another advisor, in view of the difficulties which Shankman had experienced in advising defendants.

We have read the record in relation to the representation issue (and appellants' argument that they were not allowed sufficient access to legal materials) and find from this record no merit to these claims.

The second issue we shall term the Wolverine defense. These trials were unusual in several respects. At no point did either defendant contest his participation in the bank robberies concerned. Each sought in a variety of ways to present what he termed the Wolverine defense. As repeatedly described in sworn statements by both defendants, this defense consists of their allegations that they were members of an organization called the Wolverines, organized in the federal prison system by prisoners. It is their assertion that the organization had a president and various officers and that the president, while himself incarcerated, ordered Campbell and Fultz to escape from prison and to commit the two bank robberies with which they are charged, under pain of death if they failed to do so. Originally defendants phrased their defense as that of "duress" or "necessity." In an affidavit filed July 13, 1979, before District Judge Robert M. McRae, Jr., Campbell and Fultz said as follows:

Defendants state that their defense will be unique in that there are no precedent cases for guidelines to follow and their defense consists of a cross between "necessity" and "duress." The only way Defendants can intelligently and properly support their defense will be their witnesses (witnesses physical evidence in their possession). Further, Defendants are indigent and cannot pay the costs for transportation and lodging of said witnesses.

The testimony of the below listed witnesses are material to the defense of this action for the reason that we believe that said witnesses will testify, as briefly shown below:

Glen Alan West will testify, as to being the President of a prison originated organization operating under the name of the Wolverines. The function of the Wolverines—the fact that West issued an order for Defendants to rob the complainants on two different occasions—what and where to deliver the proceeds from the bank robberies;

Thomas Edward Silverstein will testify as to being the mid-west War Capt. of the Wolverines—he received the orders from West and issued the orders, through Kathy Francis to the Defendants;

Ronald Wayne Shepard will testify to the Rules governing the Wolverines and the consequences in disobeying an order from the President of the Wolverines;

Terry Gallagher will testify that after receiving an order from West, that he escaped from Leavenworth Prison, under the fear of death, and further robbed several banks in which the proceeds were deposited in the Wolverine War Chest;

James Kenny Johnson will testify to the attempt escape in Marion Prison last year wherein his wife commandeered a helicopter and was killed while trying to free Johnson. Said attempt escape was ordered and directed by the Wolverines, under the fear of death;

Debra Gail (Adkins) Fultz will testify as to Defendants receiving orders (how and

when) from the Wolverines to rob the complainants—that Defendants deposited the proceeds from the robberies into the Wolverine War Chest (where and when) —Mrs. Fultz will verify that the Wolverines do exist and that Defendants acted under fear of death.

Statements made to us by the above listed witnesses, constitute the support of our defense and the sources of our belief as to the nature of our own testimony.

Judge McRae, after considering the motion for production of the witnesses concerned, entered an order on August 3 saying in part as follows:

*Motion for Production of Incarcerated Witnesses and Motion for Production of Witnesses.* The first of these motions seeks the production of six witnesses incarcerated in four different federal institutions. The second motion seeks the production of one witness, the wife of defendant Campbell, who is presently not incarcerated. She has been convicted of a crime, but her case is on appeal. Subpoenas are sought for all of these witnesses at government expense solely for the purpose of corroborating the "defense" sought to be relied upon by the defendants at trial. That defense is referred to in the motions, affidavits, and memos in support of the motion. The Court also required and obtained further information about this from the defendants in an ex parte hearing at the bench . . . [This defense] is a cross between "necessity and duress". Defendants further explained the defense by stating that they are convicted criminals who have been incarcerated and therefore they look upon law violations differently. They state that they belong to a prison "originated" organization operating under the name of the Wolverines. They wish to subpoena Glen Alan West, a prisoner at Leavenworth because he is the president of the Wolverines, and he is the one who ordered them to rob the banks. They further contend that their membership in the Wolverines gave them no choice but to rob the bank and that if either of the two of them had refused to do so the other one would have shot him.

The defendants argue that they anticipate that the government will deny the existence of the Wolverines because the Justice Department officials do not want the public to know of the existence of gangs or control organizations in the prisons. Therefore, the defendants have sought to have some witnesses subpoenaed to prove the existence of the Wolverines by testifying to other things that the Wolverines allegedly have caused to be done. These other things bear no relationship to those defendants and these crimes other than the alleged Wolverine affiliation.

This Court has concluded that the alleged Wolverine defense is not a defense recognized in the law as a justification for the two bank robberies referred to in the indictments. Because the subpoenas of the seven witnesses are sought solely for the Wolverine defense, the motion to allow the subpoenas at government expense is denied. The defendants will be allowed to make a tender of proof by stating out of the presence of the jury what the testimony of the witnesses would be expected to be if the witnesses had been produced by subpoenas.

The rejection of the duress defense by District Judge McRae did not, however, terminate appellants' efforts to present it. On the contrary, on August 9, 1979, (the same day the Judge entered the preceding order) appellants filed what they termed "notice to raise defense of 'mental defect' for subpoena of lay witnesses." This notice recited in part: "The defense will prove that Defendants were given certain orders under certain pressures which together caused them to 'mentally defect.'" In a subsequent motion, filed on August 23, 1979, defendants pro se certified to the court "that at the time of the commission of the offenses charged against them, they were suffering from a mental defect that caused them to defect to the other side of the law which they found that they could not conform their conduct to the requirements of enough not to have had that defected con-

duct result in the charges against them, but they further certify, also under the penalties of perjury, that they are not presently suffering from any mental disease that would impair them from adequately defending themselves at the trial herein."

During all this defendants were insisting upon defending themselves. The case was ultimately assigned for trial to a different District Judge. By then the prosecution had taken the position that if defendants were to rely on a defense of mental disease or defect under Rule 12.2 of the Federal Rules of Criminal Procedure, they would be required to allow psychiatric examination by an expert witness proposed by the government. On refusal, the government contended the right to rely upon such a defense would be lost regardless of whether or not the defendants proposed to employ expert psychiatric testimony themselves. Both Campbell and Fultz refused to allow psychiatric examination by a government proposed witness. Thereupon the trial judge entered an order which said in part:

> It has been and still is the contention of the defendants that they are entitled to rely on a plea of insanity or mental defect without allowing themselves to be examined by a psychiatrist on behalf of the Government as contemplated by Rule 12.-2. The Government has taken the position that, if the defendants are to rely on such a defense, they must agree to allow a psychiatrist to examine them. This court has heretofore agreed with the Government's position and has therefore granted the Government's motion to strike this defense.

Further, the judge's order provided:

> ... since there is some authority for the proposition that a defendant can make a prima facie case in support of this defense by lay testimony, it is fair and necessary (because of the difficulty that the Government would have to get lay witnesses) and within the proper construction of Rule 12.2 that the Government have a psychiatrist examine them or the defense be stricken.

Upon consideration, the court has again reached the conclusion that the Government is right in this contention and therefore the most recent motions, hereinabove referred to, should be denied.

The trial judge then formally ordered defendants to allow themselves to be examined by a psychiatrist, stating that the trial would be continued to allow this to be done if they agreed thereto. As a result of this order, Campbell agreed to a psychiatric examination; Fultz refused.

The trials were severed. Campbell was furnished three of the lay witnesses from prison whom he sought, plus the testimony of Fultz. After they had testified, however, the District Judge instructed the jury that these witnesses had not made out a "mental defect" defense and thus removed this issue from jury consideration. At appellant Fultz's trial the court refused to order production of the imprisoned witnesses to prove the mental defect defense because Fultz had refused to allow psychiatric examination sought by the government.

At both trials the government's evidence was overwhelming as to each defendant in relation to the commission of the crimes. Among other evidence, there were clear full face pictures of both defendants in the process of committing the bank robberies, with weapons in their hands. These pictures were presented and accepted as exhibits at the trial and were available to the jury for purposes of identification.

A quick summary of the evidence before the court reveals insurmountable evidence that both defendants committed the crimes for which they were convicted. There is no record evidence of any deprivation of due process or other rights. Absent the two District Judges' handling of the duress or "mental defect" defense, guilt has been proven beyond all reasonable doubt so as to invoke the rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Crucial, however, to the constitutional validity of a conviction is the element of criminal intent. Since the trial judge gave a wholly appropriate charge on this subject in each trial, the jury verdicts must

be read as a finding of voluntary and intentional commission of the crimes concerned.

No appeal has been taken from Judge McRae's dismissal of the duress defense. We believe on the remaining issue concerning the mental defect defense that the trial judge was correct in denying defendant Fultz an opportunity to seek to prove the "mental defect" defense. We think, however, that he founded denial upon the wrong reason.

■ There is nothing in the specific language or the logic of Rule 12.2 which suggests any other penalty for a defendant's refusal to agree to examination by a government chosen psychiatrist than, as the rule and case law hold, the party so refusing shall not be allowed psychiatric evidence of his own to establish the defense. *United States v. Handy*, 454 F.2d 885, 888 (9th Cir. 1971), *cert. denied*, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972). In view of arguable conflict with appellant's right to compulsory process (See U.S.Const. Amend. VI), we decline to approve the District Judge's order denying defendant's motions for the production of witnesses on the basis of the reason he gave.

■ In these cases, however, we believe the order was entirely appropriate as to Fultz and no harm was done as to Campbell for a different reason than that given by the District Judge. Defendants' mental defect defense has no validity in law. In *United States v. Smith*, 404 F.2d 720 (6th Cir. 1968), this circuit adopted the Model Penal Code's definition of mental defect: "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of the law." We set forth three questions to be used in guiding a jury in making this determination: "1. Was [the defendant] suffering from a mental illness at the time of the commission of the crime? 2. Was that illness such as to prevent his knowing the wrongfulness of his act? 3. Was the mental illness such as to render him sub-stantially incapable of conforming his conduct to the requirements of the law he is charged with violating?" This record makes clear that the so-called "mental defect" defense Fultz and Campbell desired to present was in no way a potentially valid one within the *Smith* criteria. The motions and affidavits before the District Judge demonstrated that Fultz and Campbell were endeavoring to do no more than submit their Wolverine defense under a different label. Joining a criminal conspiracy of federal prisoners designed to violate state and federal laws may well represent "defection" from society, but it would not constitute a defense of "mental defect" without an indication that some sort of mental illness or abnormality was involved. Such is the clear import of *Smith*. No such evidence was ever tendered, nor was it in any way discernible from the motions before the court. What was discernible was that defendants' "mental defect" defense was purely an allegation that Wolverine membership had led to their "defection" from the law-abiding community at-large. While these two defendants may have "defected" from society, such willful behavior does not represent what is referred to as a mental defect within the meaning of federal law. A contrary ruling would give professional criminals a license to break any law they chose and would move this nation's law toward the law of the jungle.

■ Nor is the defense of duress available to a person who contends that he has joined either voluntarily or under compulsion a criminal organization which is devoted to violating the law of the land, even if he asserts that he has acted under the orders of that organization in fear of his life. The defense of duress is available to a defendant in a criminal case only when the threat of death is immediately and imminently present at the time of the commission of the crime. It is not available to each of two armed men participating in bank robberies on the theory that each was coercing the other, particularly when neither ever sought the protection of the law or ever undertook to surrender to the law.

*See United States v. Campbell,* 609 F.2d 922 (8th Cir. 1979), *cert. denied,* 445 U.S. 918, 100 S.Ct. 1282, 63 L.Ed.2d 604 (1980); *United States v. Saettele,* 585 F.2d 307 (8th Cir. 1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979); *United States v. Michelson,* 559 F.2d 567 (9th Cir. 1977); *United States v. Gordon,* 526 F.2d 406 (9th Cir. 1975).

This case has been tried before as to these two defendants albeit in relation to another bank robbery in another state, another district and another circuit. In *United States v. Campbell, supra,* Circuit Judge Stephenson of the Eighth Circuit said concerning these same two defendants and the same defense:

> Basically a defense of duress or coercion requires that there be an immediate threat of death or serious bodily harm which requires the defendant to commit the criminal act, and it must be in a situation in which there was no opportunity to avoid the danger. *United States v. Saettele,* 585 F.2d 307, 309 (8th Cir. 1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d· 458 (1979); *United States v. Michelson,* 559 F.2d 567 (9th Cir. 1977); *United States v. Patrick,* 542 F.2d 381, 386–88 (7th Cir. 1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *United States v. Gordon,* 526 F.2d 406 (9th Cir. 1975). Additionally, most courts require the offender to surrender when the threat abates, this factor usually arising in escape cases. *United States v. Michelson,* 559 F.2d 567, 569–70 (9th Cir. 1977).
>
> The defendants are required to introduce facts sufficient to trigger consideration of the coercion defense by way of an instruction. They must introduce evidence on all elements of the defense. *United States v. Patrick,* 542 F.2d 381, 388 (7th Cir. 1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). If evidence is introduced, but it is apparent that all of the requirements of the coercion defense are not addressed, the trial court is not obligated to allow the evidence to remain for consideration by the jury. *United States v. Gordon,* 526 F.2d 406, 408 (9th Cir. 1975).

We conclude that both trial courts correctly determined that testimony of members of the prison gang could not prove the immediacy of the threat, or show that Fultz and Campbell were unable to surrender when the threat abated. Therefore, they properly denied the motions to produce the witnesses. We also do not agree with the defendants' contention on appeal that testimony stating either defendant would have immediately killed the other in the event of disobedience of gang rules satisfied the immediacy or surrender requirements of the defense. Therefore, the trial courts properly excluded any instruction on the duress defense, and Judge Stuart in the escape case properly exercised his discretion in striking evidence related solely to that defense.

Requiring the defendants' allegations to meet the previously mentioned test for coercion before an instruction will be given does not unconstitutionally shift the burden of proof. The trial court may require the accused to place before the court facts giving rise to a coercion defense, which will then be instructed upon. At that point the prosecution must rebut the issues of coercion beyond a reasonable doubt. *See United States v. Hearst,* 563 F.2d 1331, 1336 n. 2 (9th Cir. 1977), *cert. denied,* 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978); *United States v. Johnson,* 516 F.2d 209, 212–13 (8th Cir.), *cert. denied,* 423 U.S. 859, 96 S.Ct. 112, 46 L.Ed.2d 85 (1975). Defendants' burden of going forward to introduce sufficient facts to support an instruction on a coercion defense in no way altered the government's obligation to prove willfulness beyond a reasonable doubt, and the trial court properly instructed the juries on the willfulness requirement.

As is obvious, we agree.

Affirmed.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring in part, dissenting in part.

I agree with the majority that defendant Campbell's conviction should be affirmed.

Accordingly, I concur in that portion of the opinion. However, I respectfully disagree with the majority's conclusion that the District Court correctly denied defendant Fultz "an opportunity to seek to prove the 'mental defect' defense." I feel compelled to set forth my reasons.

As an initial matter, I agree with Chief Judge Edwards' refusal to approve the District Judge's order striking Fultz's mental defect defense as punishment for his refusal to submit to a court-ordered psychiatric examination. Federal Rule of Criminal Procedure 12.2(b) prescribes the proper method for raising the issue of a mental disease or defect. The Rule requires a defendant to notify the government before trial if he intends to introduce *expert testimony* relating to his mental condition. Rule 12.2(c) provides that, in an appropriate case, the court may order the defendant to submit to a psychiatric examination. Rule 12.2(d) establishes the sole sanction for a defendant's failure either to give timely notice or to submit to a court-ordered examination: "the court *may exclude* the testimony of any *expert witness* offered by the defendant on the issue of his mental state." As I read it, the purpose of Rule 12.2(b), (c), and (d) is two-fold. First, the Rule was designed to prevent the delay occasioned by "surprise" mental defect expert testimony. The Advisory Committee's notes reveal that the Rule's drafters intended to provide the government time to prepare to meet the issue and to prevent the need for a mid-trial continuance. Second, the Rule attempts to ensure that the government will have a similar arsenal of psychiatric or other expert testimony to meet its burden of proving sanity or mental capacity beyond a reasonable doubt. It would be anomalous if a defendant were permitted to offer psychiatric testimony on his own behalf, and then to preclude the government from offering contradictory testimony by refusing a court-ordered psychiatric examination. The Rule was designed to prevent this possibility.

I feel that the District Court's order striking Fultz's mental defect defense exceeds the authority conferred by the Rule's language, and fails to further the Rule's purposes. Fultz complied with the notice provision, specifically informing the government that he would *not* call experts on his behalf. The government persuaded the District Court to strike the defense entirely after Fultz refused to be examined, claiming that it would face an impossible burden if it were forced to rebut Fultz's defense with lay witnesses. The government's claim is specious. Fultz has spent eighteen years of his life in custody. The government could have produced countless lay witnesses—prison guards and administrators or fellow inmates—to testify about Fultz's mental state. In fact, Fultz had just escaped from a federal institution a few weeks before he robbed the bank.[1] In my view, administrative difficulty is a weak reed with which to support exclusion of an entire theory of defense.

Neither the District Court nor the government can point to any authority supporting its broad reading of the Rule. I have found only one such case. In *United States v. Leonard*, 609 F.2d 1163, 1165 n. 3 (5th Cir. 1980), the Fifth Circuit commented in a footnote that a defendant could "be barred from raising the issue of insanity as a defense if he did not submit to an examination by a court-designated psychiatrist." I find this statement unpersuasive for several reasons. First, it is merely dictum, and in no way binds this or any other court. Second, the *Leonard* footnote incorrectly relies on *Smith v. Estelle*, 602 F.2d 694 (5th Cir. 1979), *aff'd*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), as direct authority for the proposition. *Smith* was a habeas corpus case concerned solely with the question whether the state could use evidence from a compelled psychiatric examination to show a defendant's propensity to commit violent acts in the future. The Fifth Circuit in *Smith* expressly avoided the narrow question whether a defendant who does *not* introduce psychiatric evidence at

---

1. I note that Fultz's lengthy confinement is not necessary for this conclusion. The government has subpoena power and broad investigative power at its disposal.

the sentencing phase of a capital trial, must submit to an examination by a doctor nominated by the state. *Id.* at 705 n.15. The court stated that: "we leave open the possibility that a defendant who wishes to use psychiatric evidence in his own behalf can be precluded from using it unless he is willing to be examined by a psychiatrist nominated by the state." *Id.* at 705. *Smith* simply does not support the *Leonard* footnote's assertion that a court may strike a mental defect or insanity defense if a defendant fails to allow a government psychiatric examination.

Third, *Leonard's* interpretation of Rule 12.2(b) is unique. The weight of authority suggests that the only sanction permissible under 12.2(b) and (c) for failing to give notice or refusing to be examined, is the exclusion of a defendant's expert witnesses. *E.g., United States v. Olson,* 576 F.2d 1267 (8th Cir.), *cert. denied,* 439 U.S. 896, 99 S.Ct. 256, 58 L.Ed.2d 242 (1978); *United States v. Staggs,* 553 F.2d 1073 (7th Cir. 1977). *See also United States v. Handy,* 454 F.2d 885 (9th Cir. 1971), *cert. denied,* 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972) (exclusionary rule would apply to defendant's refusal to submit to compulsory psychiatric examination pursuant to 18 U.S.C. § 4244.)[2] Of course, the Rule's sanction is permissive and need not be imposed. One court has suggested that the exclusionary penalty should not be applied to indigent or *pro se* defendants. *United States v. Smith,* 437 F.2d 538 (6th Cir. 1970) (by implication). At least one court has labeled exclusion of expert defense testimony a "drastic sanction" which should be applied sparingly. *United States v. Staggs,* 553 F.2d at 1077.

It is clear that the Rule is limited, by its terms and as applied by the courts. Beyond the fact that the Rule's remedy is narrowly drawn, fairness requires that its scope not be expanded beyond its plain meaning. In my view, the District Court's order excluding Fultz's entire defense theory offends not only the terms of Rule 12.2(d), but due process as well. I disagree with the majority's conclusion that Fultz was treated fairly. In my view, Fultz was denied his constitutional right to raise an arguably valid defense, and to present to the jury the issue of his mental state. I therefore dissent for the following reasons.

First, I cannot join the majority's assertion that Fultz's mental defect defense has no validity in law. The majority assumes, without any factual support, that Fultz is merely "antisocial", and not mentally disturbed. Thus, according to the majority, Fultz was never entitled to rely on a mental defect defense. However, this court has never adopted the following definition of mental disease propounded by the ALI Model Penal Code: "the terms 'mental disease or defect' do not include any abnormality manifested only by repeated criminal or otherwise antisocial conduct." In *United States v. Gay,* 522 F.2d 429 (6th Cir. 1975), this court held that the question whether an antisocial or psychopathic personality labors under a mental disease or defect, *should not be decided as a matter of law,* either affirmatively or negatively. Rather, the question should be submitted to the jury. In *Gay,* we expressly approved an instruction charging the jury that an antisocial personality is a condition "which may or

**2.** 18 U.S.C. § 4244 empowers a court to order a psychiatric examination to determine a defendant's competency to stand trial. The Third Circuit in *United States v. Alvarez,* 519 F.2d 1036 (3rd Cir. 1975) strongly hinted that the government routinely abuses section 4244 powers in an effort to gain evidence with which to prove sanity beyond a reasonable doubt:

> We are advised that United States attorneys have frequently sought § 4244 examinations specifically for the purpose of obtaining evidence on the issue of criminal responsibility in order to rebut anticipated insanity defenses, and that this practice is in accordance

with the policy of the Criminal Division of the Justice Department. This use of § 4244 seems to us entirely inconsistent with its limited purpose. We construe the statute to mean what it appears to say. A defendant may be compelled to submit to a psychiatric examination for the purpose of determining his competency to stand trial, and the psychiatrist can testify at a hearing for that purpose. But that psychiatrist cannot, if the defendant is found to be competent, testify against him at the trial about statements he made in the course of the compelled examination.

may not be included within the definition of mental disease or defect." *Id.* at 433. Judge Lively, writing for a unanimous panel, stated that:

> In [*United States v. Smith*, 404 F.2d 720 (6th Cir. 1968)], we framed the questions to be submitted to juries required to determine the issue of legal sanity in criminal cases. The District Judge in the present case submitted the required questions, the first of which was whether Steven Gay was suffering from a mental illness at the time of the commission of the robbery. Though the medical witnesses for the prosecution and the defense agreed that appellant is a psychopathic personality, they disagreed sharply on whether or not he was suffering from a mental illness or defect. It was properly left to the jury to decide which testimony to accept and, in the event of a finding that a mental illness or defect did exist, to go on to determine whether or not it so affected his conduct as to relieve him of legal responsibility for his criminal acts.

*Id.* (footnote omitted). I see no reason to depart from this court's holding in *Gay*. In effect, the majority has adopted the Model Code's limiting definition of mental disease, and has applied it retroactively to Fultz.

Furthermore, it is clear that the District Court did not assess independently the merits or the strength of Fultz's mental defect defense. The defense was stricken as punishment for Fultz's refusal to be examined. The District Court specifically stated that if the defendants allowed themselves to be examined, "they may rely on their defense." There is simply no support in Fultz's record for the majority's assumption that Fultz could not have raised a mental disease or defect issue for the jury.

Second, even if Fultz was not technically entitled to rely on a *defense*[3] of mental disease, he was, nevertheless, entitled to introduce evidence relevant to his mental state at the time of the crime. Fultz was charged with armed robbery of a federally insured bank in violation of 18 U.S.C. §§ 2113(a) and (d). In this Circuit, armed bank robbery under this statute is a *specific intent* crime. *Hamilton v. United States*, 475 F.2d 512 (6th Cir. 1973). The Fifth and Second Circuits also require proof of specific intent to support convictions under 18 U.S.C. §§ 2113(a) and (d). *Caples v. United States*, 391 F.2d 1018 (5th Cir. 1968); *United States v. Howard*, 506 F.2d 1131 (2nd Cir. 1974).

Several other circuits have construed sections 2113(a) and (d) as general intent crimes: *United States v. Brown*, 547 F.2d 36 (3rd Cir. 1976), *cert. denied* 431 U.S. 905, 97 S.Ct. 1698, 52 L.Ed.2d 389 (1977); *United States v. Johnston*, 543 F.2d 55 (8th Cir. 1976); *United States v. Hartfield*, 513 F.2d 254 (9th Cir. 1975); *United States v. De Leo*, 422 F.2d 487 (1st Cir.), *cert. denied*, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970). *But see United States v. Lilly*, 512 F.2d 1259 (9th Cir. 1975). These courts have consistently refused to allow juries to consider evidence of voluntary drug and alcohol intoxication, or mental state generally, to demonstrate a defendant's incapacity to form specific intent. This may well be the better rule, because taking by force and violence [§ 2113(a)] is analogous to common law robbery. Both sections (a) and

---

**3.** As Fultz timely notified the government, he intended to rely solely on a *defense* of mental defect, after his duress defense was stricken. The Rule's language speaks of insanity as a "defense", and mental defect as a negation of the "mental element required for the offense charged." This distinction may foster confusion, raising the question whether mental defect is technically a defense. In my view, this is a distinction without a difference. The Rule does not attempt to define the substantive law of insanity, which differs from circuit to circuit. As the Advisory Committee Notes point out, the National Commission on Reform of Federal Criminal Laws has recommended the following definition of an insanity or mental condition defense, which is identical to the Model Penal Code's definition of insanity: "In any prosecution for any offense lack of criminal responsibility by reason of mental disease or defect is a defense." [Study Draft of a New Federal Criminal Code § 503 at 36–37.] The Notes state further that subdivision (a) should be changed to read: "defense of lack of criminal responsibility by reason of mental disease or defect", replacing "defense of insanity." This circuit has specifically adopted the Model Penal Code test for insanity. *United States v. Smith*, 404 F.2d at 727. Thus, Fultz properly raised a defense based on mental defect.

(d) describe acts which, "when performed, are so unambiguously dangerous to others that the requisite mental element is necessarily implicit in the description." *United States v. Brown*, 547 F.2d at 39. Nevertheless, this rule is not the law of this Circuit. We are bound to follow *Hamilton*, in which this court specifically approved an instruction asking a jury to decide whether, by reason of intoxication at the time of the crime, a defendant was able to form the *specific intent* to commit armed bank robbery under 18 U.S.C. §§ 2113(a) and (d).

The record reveals that the Trial Judge treated the offenses as specific intent crimes. Although the indictment returned against Fultz did not specifically charge him with willfully and knowingly robbing the bank, the District Court instructed the jury that one of the "ingredients" of the crimes charged was willfulness. Fultz was also charged with and convicted of the specific intent crime of aiding and abetting the commission of a crime. In his charge to the jury, the District Judge defined "willfully" as "something done voluntarily and intentionally and with *specific intent* to do something the law forbids."

It is indisputable that Fultz's state of mind at the time of the robberies was at issue during his trial. Any character evidence or testimony bearing on Fultz's state of mind would have been relevant under Federal Rules of Evidence 402 and 404(a),[4] and therefore presumptively admissible. *See United States v. Staggs, supra.* In my view, it was error to prevent Fultz from presenting relevant, exculpatory evidence bearing on an essential element of the crimes of which he stood accused.

Clearly the trial judge would have been justified in refusing to instruct the jury if Fultz failed to present sufficient evidence to call into question his mental capacity at the time of the robberies. This is precisely the course the trial judge took in Campbell's case. Due process required the District Judge to permit Fultz to attempt to

show that he lacked specific intent. The following language from *Smith v. United States*, 353 F.2d 838, 842 (D.C.Cir. 1965), cert. denied, 384 U.S. 974, 86 S.Ct. 1867, 16 L.Ed.2d 684 (1966), aptly summarizes my point:

> On this record, it is unlikely that any jury would have a reasonable doubt regarding appellant Smith's responsibility for the crime. This, however, is beside the point. It has been the consistent teaching of our past cases that whenever "some evidence" of mental disease or defect is presented, the question of responsibility must be answered by the jury.

Similarly, in *United States v. Garner*, 529 F.2d 962 (6th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376 (1976), and *Garner v. United States*, 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 124 (1976), this court held that a trial judge who refused to charge the jury adequately on a defendant's theory of the case, committed reversible error. *See also United States v. McRary*, 616 F.2d 181 (5th Cir. 1980). Applying both principles to those circumstances, it is clear that Fultz's conviction cannot stand. I would reverse and remand for a new trial.

---

**4.** Rule 404(a) provides that: "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except ... [e]vidence of a pertinent trait of his character offered by an accused."