Justice Kennedy,
concurring.
No one disputes that, subject to constitutional constraints, Congress has the authority to determine the content of a duress defense with respect to federal crimes and to direct whether the burden of proof rests with the defense or the prosecution. The question here is how to proceed when Congress has enacted a criminal statute, the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 197 et seq. (hereinafter Safe Streets Act), without explicit instructions regarding the duress defense or its burden of proof. See ante, at 12-13.
When issues of congressional intent with respect to the nature, extent, and definition of federal crimes arise, we assume Congress acted against certain background understandings set forth in judicial decisions in the Anglo-American legal tradition. See United States v. Bailey, 444 U. S. 394, 415, n. 11 (1980). Those decisions, in turn, consult sources such as legal treatises and the American Legal Insti *18 tute’s Model Penal Code. See, e. g., United States v. Jimenez Recio, 537 U. S. 270, 275-276 (2003); Salinas v. United States, 522 U. S. 52, 64-65 (1997). All of these sources rely upon the insight gained over time as the legal process continues. Absent some contrary indication in the statute, we can assume that Congress would not want to foreclose the courts from consulting these newer sources and considering innovative arguments in resolving issues not confronted in the statute and not within the likely purview of Congress when it enacted the criminal prohibition applicable in the particular case.
While the Court looks to the state of the law at the time the statute was enacted, see ante, at 14, the better reading of the Court’s opinion is that isolated authorities or writings do not control unless they were indicative of guiding principles upon which Congress likely would have relied. Otherwise, it seems altogether a fiction to attribute to Congress any intent one way or the other in assigning the burden of proof. It seems unlikely, moreover, that Congress would have wanted the burden of proof for duress to vary from statute to statute depending upon the date of enactment. Consistent with these propositions, the Court looks not only to our precedents and common-law traditions, but also to the treatment of the insanity defense in a 1984 statute and a proposal of the National Commission on Reform of Federal Criminal Laws, even though they both postdated the passage of the Safe Streets Act. See ante, at 12, 15.
As there is no reason to suppose that Congress wanted to depart from the traditional principles for allocating the burden of proof, the proper approach is simply to apply these principles to the context of duress. See, e. g., Schaffer v. Weast, 546 U. S. 49, 56 (2005) (where the plain text of the statute is “silent on the allocation of the burden of persuasion,” we proceed to consider the “ordinary default rule” and its exceptions). The facts needed to prove or disprove the defense “lie peculiarly in the knowledge of” the defendant. *19 2 K. Broun, McCormick on Evidence §337, p. 475 (6th ed. 2006); see ante, at 8-9. The claim of duress in most instances depends upon conduct that takes place before the criminal act; and, as the person who allegedly coerced the defendant is often unwilling to come forward and testify, the prosecution may be without any practical means of disproving the defendant’s allegations. There is good reason, then, to maintain the usual rule of placing the burden of production and persuasion together on the party raising the issue. See 2 Broun, supra, §337; ante, at 8. The analysis may come to a different result, of course, for other defenses.
With these observations, I join the Court’s opinion.
Justice Alito, with whom Justice Scalia joins, concurring.
I join the opinion of the Court with the understanding that it does not hold that the allocation of the burden of persuasion on the defense of duress may vary from one federal criminal statute to another.
Duress was an established defense at common law. See 4 W. Blackstone, Commentaries on the Laws of England 30 (1769). When Congress began to enact federal criminal statutes, it presumptively intended for those offenses to be subject to this defense. Moreover, Congress presumptively intended for the burdens of production and persuasion to be placed, as they were at common law, on the defendant. Although Congress is certainly free to alter this pattern and place one or both burdens on the prosecution, either for all or selected federal crimes, Congress has not done so but instead has continued to revise the federal criminal laws and to create new federal crimes without addressing the issue of duress. Under these circumstances, I believe that the burdens remain where they were when Congress began enacting federal criminal statutes.
I do not assume that Congress makes a new, implicit judgment about the allocation of these burdens whenever it ere *20 ates a new federal crime or, for that matter, whenever it substantially revises an existing criminal statute. ' It is unrealistic to assume that on every such occasion Congress surveys the allocation of the burdens of proof on duress under the existing federal case law and under the law of the States and tacitly adopts whatever the predominant position happens to be at the time. Such a methodology would create serious problems for the district courts and the courts of appeals when they are required to decide where the burden of persuasion should be allocated for federal crimes enacted on different dates. If the allocation differed for different offenses, there might be federal criminal cases in which the trial judge would be forced to instruct the jury that the defendant bears the burden of persuasion on this defense for some of the offenses charged in the indictment and that the prosecution bears the burden on others.
I would also not assume, as Justice Breyer does, see post, at 22 (dissenting opinion), that Congress has implicitly delegated to the federal courts the task of deciding in the manner of a common-law court where the burden of persuasion should be allocated. The allocation of this burden is a debatable policy question with an important empirical component. In the absence of specific direction from Congress, cf. Fed. Rule Evid. 501, I would not assume that Congress has conferred this authority on the Judiciary.
Justice Breyer, with whom Justice Souter joins, dissenting.
Courts have long recognized that “duress” constitutes a defense to a criminal charge. Historically, that defense “excuse[d] criminal conduct” if (1) a “threat of imminent death or serious bodily injury” led the defendant to commit the crime, (2) the defendant had no reasonable, legal alternative to breaking the law, and (3) the defendant was not responsible for creating the threat. United States v. Bailey, 444 U. S. 394, 409-410 (1980); see also 2 W. LaFave, Substantive *21 Criminal Law § 9.7(b), pp. 74-82 (2003) (hereinafter LaFave); ante, at 4, n. 1 (opinion of the Court). The Court decides today in respect to federal crimes that the defense must bear the burden of both producing evidence of duress and persuading the jury. I agree with the majority that the burden of production lies on the defendant, that here the burden of persuasion issue is not constitutional, and that Congress may allocate that burden as it sees fit. But I also believe that, in the absence of any indication of a different congressional intent, the burden of persuading the jury beyond a reasonable doubt should lie where such burdens normally lie in criminal cases, upon the prosecution.
I
My disagreement with the majority in part reflects my different view about how we should determine the relevant congressional intent. Where Congress speaks about burdens of proof, we must, of course, follow what it says. But suppose, as is normally the case, that the relevant federal statute is silent. The majority proceeds on the assumption that Congress wished courts to fill the gap by examining judicial practice at the time that Congress enacted the particular criminal statute in question. Ante, at 12-16. I would not follow that approach.
To believe Congress intended the placement of such burdens to vary from statute to statute and time to time is both unrealistic and risks unnecessary complexity, jury confusion, and unfairness. It is unrealistic because the silence could well mean only that Congress did not specifically consider the “burden of persuasion” in respect to a duress defense. It simply did not think about that secondary matter. Had it done so, would Congress have wanted courts to freeze current practice statute by statute? Would it have wanted to impose different burden-of-proof requirements where claims of duress are identical, where statutes are similar, where the only relevant difference is the time of enactment? Why? *22 Indeed, individual instances of criminal conduct often violate several statutes. In a trial for those violations, is the judge to instruct the jury to apply different standards of proof to a duress defense depending upon when Congress enacted the particular statute in question? What if in this very case the defendant’s boyfriend had given her drug money and insisted (under threat of death) not only that she use some of the money to buy him a gun, but that she launder the rest? See 18 U. S. C. § 1956 (2000 ed. and Supp. II); see infra, at 25-27.
I would assume instead that Congress’ silence typically means that Congress expected the courts to develop burden rules governing affirmative defenses as they have done in the past, by beginning with the common law and taking full account of the subsequent need for that law to evolve through judicial practice informed by reason and experience. See Davis v. United States, 160 U. S. 469 (1895); McNabb v. United States, 318 U. S. 332, 341 (1943); ante, at 14, n. 8 (opinion of the Court) (proposed general revision of the federal criminal code would have instructed courts to determine the contours of affirmative defenses “ ‘according to the principles of the common law as they may be interpreted in the light of reason and experience’ ”); 9 J. Wigmore, Evidence § 2486, p. 291 (J. Chadbourn rev. ed. 1981) (allocation of the burdens of proof present courts with questions “of policy and fairness based on experience in the different situations”). That approach would produce uniform federal practice across different affirmative defenses, as well as across statutes passed at different points in time.
II
My approach leads me to conclude that in federal criminal cases, the prosecution should bear the duress defense burden of persuasion. The issue is a close one. In Blackstone’s time the accused bore the burden of proof for all affirmative defenses. See 4 W. Blackstone, Commentaries *201; Patterson v. New York, 432 U. S. 197, 201-202 (1977). And 20th-century experts have taken different positions on the matter. *23 The Model Penal Code, for example, recommends placing the burden of persuasion on the prosecution. ALI, Model Penal Code §1.12, p. 16, § 1.13(9)(c), p. 18, §2.09, pp. 37-38 (1985). The Brown Commission recommends placing it upon the defendant. 1 National Commission on Reform of Federal Criminal Laws, Working Papers 278 (1970). And the proposed revision of the federal criminal code, agnostically, would have turned the matter over to the courts for decision. S. 1722, 96th Cong., 1st Sess., §501 (1979). Moreover, there is a practical argument that favors the Government’s position here, namely, that defendants should bear the burden of persuasion because defendants often have superior access to the relevant proof.
Nonetheless, several factors favor placing the burden on the prosecution. For one thing, in certain respects the question of duress resembles that of mens rea, an issue that is always for the prosecution to prove beyond a reasonable doubt. See In re Winship, 397 U. S. 358, 364 (1970); Martin v. Ohio, 480 U. S. 228, 234 (1987). The questions are not the same. The defendant’s criminal activity here was voluntary; no external principle, such as the wind, propelled her when she acted. The Nicomachean Ethics of Aristotle, p. 54 (R. Browne transí. 1865). Moreover, her actions were intentional. Whether she wanted to buy the guns or not, and whether she wanted to lie while doing so or not, she decided to do these things and knew that she was doing them. Indeed, her action was willful in the sense that she knew that to do them was to break the law. Ante, at 5-7 (opinion of the Court); see also Ratzlaf v. United States, 510 U. S. 135, 136-137 (1994).
Nonetheless, where a defendant acts under duress, she lacks any semblance of a meaningful choice. In that sense her choice is not free. As Blackstone wrote, the criminal law punishes “abuse[s] of th[e] free will”; hence “it is highly just and equitable that a man should be excused for those acts, which are done through unavoidable force and compul *24 sion.” 4 Commentaries *27. And it is in this “force and compulsion,” acting upon the will, that the resemblance to lack of mens rea lies. Cf. Austin, Ifs and Cans, in Proceedings of the British Academy 123-124 (1956) (noting difference between choosing to do something where one has the opportunity and ability to do otherwise and choosing to do something where one lacks any such opportunity or ability). Davis v. United States, supra, allocated the federal insanity defense burden to the Government partly for these reasons. That case, read in light of Leland v. Oregon, 343 U. S. 790, 797 (1952), suggests that, even if insanity does not always show the absence of mens rea, it does show the absence of a “ ‘vicious will.’ ” Davis, supra, at 484 (citing Blackstone; emphasis added).
For another thing, federal courts (as a matter of statutory construction or supervisory power) have imposed the federal-crime burden of persuasion upon the prosecution in respect to self-defense, insanity, and entrapment, which resemble the duress defense in certain relevant ways. In respect to both duress and self-defense, for example, the defendant’s illegal act is voluntary, indeed, intentional; but the circumstances deprive the defendant of any meaningful ability or opportunity to act otherwise, depriving the defendant of a choice that is free. Insanity, as I said, may involve circumstances that resemble, but are not identical to, a lack of mens rea. And entrapment requires the prosecution to prove that the defendant was “predisposed” to commit the crime—a matter sometimes best known to the defendant.
As to self-defense, see First Circuit Pattern Criminal Jury Instructions § 5.04 (1998); United States v. Thomas, 34 F. 3d 44, 47 (CA2 1994); Government of Virgin Islands v. Smith, 949 F. 2d 677, 680 (CA3 1991); United States v. Harris, Nos. 95-5637, 95-5638, 1996 U. S. App. LEXIS 22040, *4-*5 (CA4, Aug. 27, 1996); United States v. Branch, 91 F. 3d 699, 714, n. 1 (CA5 1996); Sixth Circuit Pattern Criminal Jury Instructions § 6.06 (2005); United States v. Jackson, 569 F. 2d *25 1003, 1008, n. 12 (CA7 1978); United States v. Pierre, 254 F. 3d 872, 876 (CA9 2001); United States v. Corrigan, 548 F. 2d 879, 883 (CA10 1977); United States v. Alvarez, 755 F. 2d 830, 842 (CA11 1985); Bynum v. United States, 408 F. 2d 1207 (CADC 1968); see also Mullaney v. Wilbur, 421 U. S. 684, 702, n. 30 (1975) (noting this as the “‘majority rule’”).
As to insanity, see Davis, 160 U. S., at 486; Leland, supra, at 797 (making clear that Davis determined burden allocations as a matter of federal, but not constitutional, law); but see 18 U. S. C. § 17(b) (overruling this default rule to place the burden on the defendant by clear and convincing evidence). As to entrapment, see Jacobson v. United States, 503 U. S. 540, 554 (1992) (reversing the judgment affirming the conviction because “the prosecution failed, as a matter of law, to adduce evidence to support the jury verdict that petitioner was predisposed, independent of the Government’s acts and beyond a reasonable doubt,” to commit the crime). See also Patterson, 432 U. S., at 202 (noting that Davis “had wide impact on the practice in the federal courts with respect to the burden of proving various affirmative defenses”); Patterson, supra, at 231 (Powell, J., dissenting) (“[SJince this Court’s decision in Davis . . . federal prosecutors have borne the burden of persuasion with respect to factors like insanity, self-defense, and malice or provocation, once the defendant has carried this burden of production”).
Further, most federal courts, in respect to most federal crimes, have imposed the burden of persuasion in respect to the duress defense upon the Government, following Johnson v. United States, 291 F. 2d 150, 155 (CA8 1961), and authorities such as E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 13.14, p. 293 (2d ed. 1970), and Sthe Federal Judicial Center Pattern Criminal Jury Instructions §56 (1988). By the mid-1990’s, seven Circuits had squarely placed the burden of persuasion upon the prosecution; one Circuit (the Fifth) placed the burden on the defendant; and four (the Third, Fourth, Eleventh, and District of Columbia) *26 did not, as far as I can tell, have a definitive practice. Compare United States v. Arthurs, 73 F. 3d 444, 448 (CA1 1996); United States v. Mitchell, 725 F. 2d 832, 836 (CA2 1983); United States v. Campbell, 675 F. 2d 815, 821 (CA6 1982); United States v. Talbott, 78 F. 3d 1183, 1186 (CA7 1996) (per curiam); United States v. Campbell, 609 F. 2d 922, 925 (CA8 1979); United States v. Hearst, 563 F. 2d 1331, 1336, and n. 2 (CA9 1977) (per curiam); and United States v. Falcon, 766 F. 2d 1469, 1477 (CA10 1985), with United States v. Willis, 38 F. 3d 170, 179 (CA5 1994) (putting the burden on the defendant by a preponderance). Compare also First Circuit Pattern Criminal Jury Instructions § 5.05 (1998); Sixth Circuit Pattern Criminal Jury Instructions §6.05 (1991); Seventh Circuit Pattern Criminal Federal Jury Instructions § 6.08 (1998); and Eighth Circuit Pattern Criminal Jury Instructions §§3.09, 9.02 (2000), with Fifth Circuit Pattern Criminal Jury Instructions §1.36 (2001). Petitioner adds, without contradiction, that the States allocate the burden similarly by a ratio of 2 to 1. Brief for Petitioner 32-34; Brief for United States 38, n. 30.
Beginning in 1991, the matter became more complicated because the Ninth Circuit began to require the defendant to bear the burden of proving duress in certain circumstances. United States v. Dominguez-Mestas, 929 F. 2d 1379, 1382, 1384 (per curiam). And a few years later the Third, Sixth, and Eleventh Circuits followed suit in cases concerning a closely related justification defense. See United States v. Dodd, 225 F. 3d 340, 347-350 (CA3 2000); United States v. Brown, 367 F. 3d 549, 555-556 (CA6 2004); United States v. Deleveaux, 205 F. 3d 1292, 1298-1300 (CA11 2000); Eleventh Circuit Pattern Criminal Jury Instructions § 16 (2003). But see Sixth Circuit Pattern Criminal Jury Instructions §6.05 (2005) (stating that the burden-of-proof issue for duress is undecided in that Circuit).
These latter cases, however, put the burden on the defendant only where the criminal statute narrows its mens rea *27 requirement, i. e., the burden is the defendant’s where the statute requires that the defendant act with “knowledge” but not, suggest these courts, where the statute requires that the defendant act “willfully,” “intentionally,” or “voluntarily.” See, e. g., Dominguez-Mestas, supra, at 1382, 1384; United States v. Meraz-Solomon, 3 F. 3d 298, 300 (CA9 1993) (per curiam); Ninth Circuit Pattern Criminal Jury Instructions §§6.5, 6.6 (2003); but see United States v. Fei Lin, 139 F. 3d 1303, 1307-1308 (CA9 1998). See also Eleventh Circuit Pattern Criminal Jury Instructions § 16 (2003); United States v. Diaz, 285 F. 3d 92, 97 (CA1 2002) (indicating that this bifurcated rule might be appropriate, but noting Circuit precedent to the contrary). Similarly, the Tenth Circuit placed the burden of proving duress upon the defendant in “strict liability” cases where mens rea is not an element of the crime at all. United States v. Unser, 165 F. 3d 755, 763-765 (1999).
The apparent upshot is that four Circuits now place the burden of persuasion on the prosecution across the board; one places the burden on the prosecution if the statute requires mens rea but not otherwise; and four have held or suggested that the burden should be on the prosecution if the statute requires an intentional or willful state of mind, but not if the statute requires only knowledge. While the Circuits are divided, apparently only one (the Fifth) agrees with the position taken by the Court today.
Further, while I concede the logic of the Government’s practical argument—that defendants have superior access to the evidence—I remain uncertain of the argument’s strength. After all, “[i]n every criminal case the defendant has at least an equal familiarity with the facts and in most a greater familiarity with them than the prosecution.” Tot v. United States, 319 U. S. 463, 469 (1943). And the strict contours of the duress defense, as well as the defendant’s burden of production, already substantially narrow the circumstances under which the defense may be used. A defendant may find it difficult, for example, to show duress where the *28 relevant conduct took place too long before the criminal act. Cf. ante, at 18-19 (Kennedy, J., concurring). That is because the defendant must show that he had no alternative to breaking the law. Supra, at 20-21. And that will be the more difficult to show the more remote the threat. See also LaFave § 9.7, at 77-79 (duress generally requires an “immediate” or “imminent” threat, that the defendant “take advantage of a reasonable opportunity to escape,” and that the defendant “terminate his conduct ‘as soon as the claimed duress . . . had lost its coercive force’”). More important, the need to prove mens rea can easily present precisely the same practical difficulties of proof for the prosecutor. Suppose for example the defendant claims that an old lady told him that the white powder he transported across the border was medicine for her dying son. Cf. United States v. Mares, 441 F. 3d 1152 (CA10 2006). See also Mullaney v. Wilbur, 421 U. S., at 702 (requiring the government to prove an absence of passion in a murder conviction imposes “no unique hardship on the prosecution”).
It is particularly difficult to see a practical distinction between this affirmative defense and, say, self-defense. The Government says that the prosecution may “be unable to call the witness most likely to have information bearing on the point,” namely, the defendant. Brief for United States 21. But what is the difference in this respect between the defendant here, who says her boyfriend threatened to kill her, and a battered woman who says that she killed her husband in self-defense, where the husband’s evidence is certainly unavailable? See also Jacobson, 503 U. S. 540 (entrapment; need to prove “propensity”). Regardless, unless the defendant testifies, it could prove difficult to satisfy the defendant’s burden of production; and, of course, once the defendant testifies, cross-examination is possible.
In a word, I cannot evaluate the claim of practicality without somewhat more systematic evidence of the existence of a problem, say, in those Circuits that for many years have *29 imposed the burden on the prosecutor. And, of course, if I am wrong about the Government’s practical need (and were my views to prevail), the Government would remain free to ask Congress to reallocate the burden.
Finally, there is a virtue in uniformity, in treating the federal statutory burden of persuasion similarly in respect to actus reus, mens rea, mistake, self-defense, entrapment, and duress. The Second Circuit, when imposing the burden of persuasion for duress on the prosecution, wrote that differences in this respect create “a grave possibility of juror confusion.” United States v. Mitchell, 725 F. 2d 832, 836 (1983) (Newman, J., joined by Feinberg, C. J., and Friendly, J.). They risk unfairness as well.
For these reasons I believe that, in the absence of an indication of congressional intent to the contrary, federal criminal law should place the burden of persuasion in respect to the duress defense upon the prosecution, which, as is now common in respect to many affirmative defenses, it must prove beyond a reasonable doubt. With respect, I dissent.