NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0441n.06
Filed: June 25, 2007

NO. 06-5043

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

DARELL LESTER,

        Defendant-Appellant.

        ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

_____/

BEFORE: SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

        **PER CURIAM**. Darell Lester ("Lester") appeals from his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He contends that the district court erred by permitting cross-examination of defense witness Rhonda Wilson ("Wilson"), his girlfriend, regarding a domestic violence incident involving him and Wilson. He also challenges the district court's imposition of a four-level § 2K2.1(b)(5) enhancement. For the reasons set forth in this opinion, we **AFFIRM** Lester's conviction and sentence.

**I.**

        At Lester's trial on the felon in possession of a firearm charge, the Government presented evidence that on November 22, 2003, officers from the Memphis Police Department responded to a telephone call from Wilson's niece, Kambelyn Williams ("Williams"), reporting that Lester had

-1-

fired three shots in front of Wilson's home. At the time the gunshots were fired, children from the neighborhood were playing on the sidewalk less than twenty feet from Lester. When the responding officers arrived, they were informed by Wilson that Lester fired the gun, and officers thereupon recovered a gun fitting the caller's description in Wilson's house.

Wilson testified as a defense witness. During her direct testimony, Wilson denied telling officers that Lester shot the firearm. The defense lawyer also asked Wilson a series of questions regarding Williams, who was the informant that telephoned the Memphis Police Department regarding Lester firing gunshots. The defense lawyer specifically probed for reasons as to why Williams disliked Lester.

On cross-examination, the Government also questioned Wilson concerning reasons why Williams might dislike Lester, and asked whether Williams had a problem with Lester's domestic abuse of Wilson. During this inquiry, Wilson insisted that she was not beaten by Lester. The Government responded by questioning her with respect to Lester's June 7, 2005 arrest for domestic assault against Wilson. Defense counsel objected, but the district court overruled the objection and instructed the jury that it could consider the Government's domestic violence inquiry only for the purpose of assessing Wilson's credibility.

The jury returned a guilty verdict on August 9, 2005. After finding that Lester committed felonious reckless endangerment under Tennessee law, the district court applied a four-level enhancement resulting in a sentence of 120 months' imprisonment. Lester now appeals both his conviction and his sentence.

**A.**

Lester first contends that the Government's cross-examination of Wilson on a domestic

violence incident constituted impeachment of Wilson on a collateral matter using extrinsic evidence, and should have been prohibited under Fed. R. Evid. 608(b). We review the district court's evidentiary rulings for abuse of discretion. *See United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006). "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overruled." *Id.* (quoting *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005)).

Fed. R. Evid. 608(b) provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence." Lester's claim of error under Rule 608(b) lacks merit most simply because the Government never introduced extrinsic evidence. Instead, the Government tested Wilson's credibility by cross-examining her with specific references to Wilson's June 2005 sworn affidavit of complaint included in an arrest ticket for Lester on a charge of domestic violence–but the affidavit itself was not entered into the evidentiary record. *See United States v. Drake*, 932 F.2d 861, 867 (10th Cir. 1991) ("Cross-examination questions alone . . . cannot constitute extrinsic evidence."); *United States v. Jackson*, 882 F.2d 1444, 1448-49 (9th Cir. 1989) (holding that government's reference to a written statement was admissible under Rule 608(b) where government did not introduce extrinsic evidence but instead questioned witness about contents of document). We find no error under Rule 608(b) where the Government never introduced extrinsic evidence regarding the domestic violence incident at trial, but merely cross-examined Wilson with reference to the June 2005 affidavit. *See also United States v. Markarian*, 967 F.2d 1098, 1102 (6th Cir. 1992) (stating that Rule 608(b) "prohibits contradiction [on] collateral matters by extrinsic evidence but permits cross-examination on collateral points which are relevant and otherwise proper").

Even if the Government had introduced extrinsic evidence, no error would have been committed because Wilson's prior inconsistent statements were admissible as extrinsic evidence under Fed. R. Evid. 613(b). Rule 613(b) provides for impeachment of a witness with "[e]xtrinsic evidence of a prior inconsistent statement" if "the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon . . . ." Because Wilson's sworn affidavit directly contradicted her statements made on the stand in which she denied being beaten by Lester, the Government would have been entirely justified in introducing the affidavit for the purpose of impeaching Wilson's credibility. Of course, "[t]here is no requirement under Rule 613 that a party who seeks to impeach a witness through alleged prior inconsistent statements must present extrinsic evidence to 'support' the impeachment attempt," *United States v. Gholston*, 10 F.3d 384, 388 (6th Cir. 1993), and in this instance the Government properly opted to impeach Wilson without extrinsic evidence despite having the option to do so.

**B.**

Second, Lester claims that the domestic violence testimony was unfairly prejudicial under Fed. R. Evid. 403. This claim also lacks merit because the district court issued a limiting instruction which specifically admonished the jury to consider Wilson's testimony relating to domestic violence only for the purpose of determining Wilson's credibility. Jurors are presumed to have followed the instructions of the district court. *See United States v. Carter*, 236 F.3d 777, 787 (6th Cir. 2001) ("[J]uries are presumed to understand and follow directions from the court"); *Jones v. United States*, 527 U.S. 373, 394 (1999); *United States v. Foster*, 376 F.3d 577, 592 (2004) ("A crucial assumption underlying the system of trial by jury is that juries will follow the instructions given them by the trial judge."). Accordingly, the district court's instruction "limit[ed] any possible unfair prejudice" from

-4-

the jury's use of Wilson's testimony regarding acts of domestic violence, *Foster*, 376 F.3d at 592, and thus the district court did not abuse its discretion in its Fed. R. Evid. 403 determination.

Lester also claims error as to the jury instruction issued by the district court, but since he failed to object to the content of the court's jury instruction, we review only for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Savoires*, 430 F.3d 376, 381 (6th Cir. 2005). In any event, no error occurred because the district court appropriately instructed the jury on the proper scope of the impeachment evidence. *See* Fed. R. Evid. 105.

### C.

Next, Lester argues that Wilson's testimony as it relates to the domestic violence incidents was inadmissible under Fed. R. Evid. 404(b). Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith[, but] . . . may, however, be admissible for other purposes . . . ." One purpose for which prior bad acts evidence may be admissible is for the impeachment of a witness with her prior inconsistent statement under Fed. R. Evid. 613(b). *See Foster*, 376 F.3d at 591-92 (stating that Rule 613(b) impeachment is permissible "even when the impeaching material involves 'other acts' of the defendant") (citing *Gholston*, 10 F.3d at 388). Here, pursuant to Rule 613(b), the Government solicited testimony from Wilson regarding a domestic violence incident involving Lester for the purpose of impeaching her credibility with her prior inconsistent statements found in her sworn affidavit. "The purpose was not, nor could it be, to demonstrate that [Lester] was acting in conformity with his prior bad acts or character. Showing that [Wilson] was being inconsistent demonstrates nothing more than that–her inconsistency with regard to whether or not [Lester beat her]." *Foster*, 376 F.3d at 591. Accordingly, we find no merit to Lester's claim of error under Rule

-5-

404(b).

Even if the district court committed error by allowing testimony of domestic violence, it is harmless in view of the overwhelming evidence of the Lester's guilt. Williams testified that she saw Lester hold and fire a gun. Another witness testified that she heard shots coming directly from where Lester was observed standing. Officers found a shell casing in the same location, and with the aid of Wilson, they recovered the firearm fired by Lester in a closet in Wilson's home.

**II.**

Lester also objects to his four-level sentence enhancement pursuant to § 2K2.1(b)(5), applied by the district court after finding that Lester committed the state law offense of felonious reckless endangerment. This Court reviews for clear error the factual findings of the district court, and accords "due deference" to its determination that the U.S.S.G. § 2K2.1(b)(5) enhancement applies. *See* 18 U.S.C. § 3742(e); *United States v. Burke*, 345 F.3d 416, 427 (6th Cir. 2003). "The burden is on the government to prove, by a preponderance of the evidence, that a particular sentencing enhancement applies." *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003).

Section 2K2.1(b)(5) of the Sentencing Guidelines provides that a defendant's base offense level should be enhanced by four levels if the defendant used or possessed a firearm in connection with another felony offense. This district court below applied this enhancement based on Lester's possession of the firearm in connection with the Tennessee felony of reckless endangerment, which is the offense of recklessly engaging in conduct "committed with a deadly weapon" which "places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103. "'Reckless' refers to a person who acts recklessly with respect to circumstances surrounding the conduct . . . when the person is aware of but consciously disregards a substantial and

unjustifiable risk that the circumstances exist or the result will occur." *Id*. at § 39-11-302.

Tennessee law allows indictments for reckless endangerment when the endangerment is against the public at large. *See State v. Payne*, 7 S.W.3d 25, 29 (Tenn. 1999). But if the victim is considered as the public at large, the state must show that at the time of danger, there was at least one member of the public present and in the "zone of danger." *Id*. "[T]he term 'zone of danger' may be employed to define that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area." *Id*. at 28.

On appeal, Lester argues that the testimony offered at trial was insufficient to support the inference that he fired a gun up into the air, and in the presence of children playing nearby. But he also asserts that the Government offered no evidence regarding the trajectory or flight of the bullets relative to where the children were standing. Furthermore, by firing a gun up into the air, he could only cause a "mere possibility," as opposed to a "reasonable probability," of danger–insufficient to establish reckless endangerment under Tennessee law. He cites two Tennessee cases for the proposition that a reckless endangerment conviction cannot be supported under facts in which there is only a remote possibility of a stray bullet striking another person. *See State v. Baldwin*, No. 01C01-9612-CR-00530, 1998 WL 426199 (Tenn. Crim. App. 1998); *State v. Fox*, 947 S.W.2d 865 (Tenn. Crim. App. 1996).

In *Baldwin*, the Tennessee Court of Criminal Appeals found insufficient evidence to support a conviction for reckless endangerment against a customer in a restaurant who was sitting directly behind the defendant at the time the defendant discharged the firearm. *Baldwin*, 1998 WL 426199, at *4. Although the state prosecutor argued that the restaurant was small and narrow, and that the

bullet could have hit the customer after ricocheting off a metal appliance, the court held that "mere speculation that [the customer] might have been hit by the bullet is insufficient to prove beyond a reasonable doubt that [the customer] was in imminent danger of death or serious bodily injury." *Id.*

Even if the facts of *Baldwin* were materially indistinguishable from the instant case, the applicable burden of proof in a criminal prosecution (beyond a reasonable doubt) is, in any event, different from the standard of proof required for the application of a sentencing enhancement under the Guidelines (preponderance of the evidence–so long as the sentence does not exceed the statutory maximum). While *Baldwin* found the evidence insufficient to prove beyond a reasonable doubt that the defendant committed reckless endangerment, it does not necessarily follow that the evidence was insufficient under a preponderance of the evidence standard. In any event, *Baldwin* is distinguishable because unlike the alleged victim of reckless endangerment in *Baldwin*, who was sitting behind the defendant, the victims in the instant case were not standing in a position opposite, 180 degrees, from the trajectory of the bullets fired. Rather, Lester discharged a firearm three times up in the air while children from the neighborhood were playing less than twenty feet away on the sidewalk in front of Wilson's home. According to Williams' testimony, the children "[fell] on the sidewalk" in response to Lester firing the gun. These children were therefore subjected to a much greater risk of harm than the customer in *Baldwin*.

In *Fox*, the court reversed a reckless endangerment conviction where the facts established that the defendant discharged a pistol into the air or up into a tree, but there was no evidence that anyone was either in the tree being fired upon or outside the apartment building in the immediate vicinity of the defendant. *Fox*, 947 S.W.2d at 865. Of course, *Fox* is easily distinguishable from the instant case because testimony establishes that children were in close proximity to Lester when he fired the

gun.

Based on the evidence of the children's close proximity to Lester when he fired the gun, we will defer to the district court's determination that the bystanders were in imminent danger of death or serious bodily injury. *See United States v. Corbin*, 76 F. App'x 58, 61 (6th Cir. 2003); *United States v. Boyd*, 475 F.3d 875, 878-79 (7th Cir. 2007) (holding that a defendant's act of firing multiple shots into the air in a downtown area was sufficient to support finding that he violated Indiana's felonious reckless endangerment law). The district court did not commit clear error in its determination that people were present in the zone of danger, and the Government has proven the elements of felonious reckless endangerment under Tennessee law by a preponderance of the evidence. Thus, the district court's application of the § 2K2.1(b)(5) enhancement was proper.

## III.

For the foregoing reasons, we **AFFIRM** both Lester's conviction and sentence.