File Name: 08a0493n.06
Filed: August 13, 2008

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 07-5598

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Robert Howe, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |

Before:        KEITH, GRIFFIN, and GIBSON,[*] Circuit Judges.

DAMON J. KEITH, Circuit Judge.  Robert Howe appeals his conviction for assaulting an inmate, resisting arrest and assaulting an officer, and possessing prison-made weapons.  Howe claims that the district court erred by excluding evidence relating to the affirmative defense of duress, denying his motion for acquittal or a new trial, and refusing to issue Howe's supplemental jury instructions on Counts III and IV.  For the following reasons, we **AFFIRM** the decision of the district court.

I.

While Defendant-Appellant Robert Howe ("Howe") was an inmate at the United States Penitentiary Big Sandy ("Big Sandy"), he was indicted for: (1) assaulting an inmate with the intent to murder in violation of 18 U.S.C. § 113(a)(1); (2) assaulting an inmate with the intent to do bodily

---

[*]The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

harm in violation of 18 U.S.C. § 113(a)(3); (3) assaulting, resisting, and impeding a Federal law enforcement officer in violation of 18 U.S.C. § 111(a)(1); (4) threatening to murder a correctional officer in violation of 18 U.S.C. § 115(a)(1)(B); and (5) possessing several prison-made weapons in violation of 18 U.S.C. § 1791(a)(2). (J.A. 20-23.) Prior to trial, the district court decided to hold in abeyance the government's motion in *limine* to preclude Howe from asserting the defenses of duress, justification, and self-defense. Howe deposed two fellow inmates, Jesse Sprouse and Kenneth Bates, prior to trial to give testimony relating to his defense of duress. In response, the government filed a notice objecting to their deposition testimony, and the district court issued an order and opinion precluding Howe from asserting duress, and limiting the use of Sprouse's and Bates's testimony during trial. The district court also refused to give jury instructions on the defenses of duress, justification, and self-defense.

After trial, the jury convicted Howe of assaulting a fellow inmate, assaulting, opposing, impeding and resisting a correctional officer, and possessing three prison-made weapons. Howe then filed a motion for acquittal or a new trial, which the district court denied. Howe was sentenced to 110 months imprisonment.

## II.

The circumstances leading to Howe's indictments are as follows. On July 20, 2005, Howe, while an inmate at Big Sandy, stabbed a fellow inmate, Orlando Roberts, in the head with a 5-inch plastic weapon, stating, "I'll kill you, mother fucker." *United States v. Howe*, 2007 WL 1248050, at *2 (E.D. Ky. Apr. 30, 2007). Correctional Officer Chris Adams attempted to stop the fight, ordering both Howe and Roberts to stop and get on the ground. After they failed to comply, Adams

tried to physically break up the fight, and Howe allegedly attempted to stab Adams in the stomach. Eventually, Adams, along with Lieutenant Gary Brian Crowe, were able to subdue Howe and Roberts, but Howe continued to resist. After searching Howe's person and his cell, Adams and Crowe found prison-made weapons in his possession.

Howe purports to be a member of the "Latin Kings," an active gang within Big Sandy. According to Howe, the Latin Kings have rules that require members to actively defend the gang and its honor. Howe testified that he knew of other prior situations in which Latin King gang members had been beaten for violating "charter rules." (J.A. 547-48.)

In Howe's case, the dispute between inmate Roberts and himself arose when he confronted the people working on his shift about his "missing stuff." Howe testified on avowal:

> I was taking stuff out of the kitchen, and my stuff kept coming up missing. So I was trying to figure out who exactly was, you know, finding my stuff or taking it or telling the administration or what have you.
> . . . I went to each individual that worked my shift . . . . I said, "Listen, I don't know if you are telling on me or anything; but if you are, you need to stop. . . . Please don't put me in a position where I'm forced to do something."
> A week later, the same incident occurred, and I approached Inmate Roberts about it. And he was pretty aggressive and vociferous about his response. He told me pretty much in a nutshell that he did tell on me, and there was nothing I could do about it, if I don't like it I could pretty much go bite dust, or what have you.
> He said this in front of Lamonte Smith, who is the number-one representative for the Vice Lords organization on the compound, who is a prison gang who is affiliated with the Latin Kings very, very closely.
> When he said that in front of Mr. Smith, Orlando Roberts put me in a very serious position. I knew right then if I did not do something to stop this imminent threat from coming down on my head then I would be very, very sorry.
> I knew from my knowledge of the manifesto and other things that had happened inside of the prison that if I didn't do something right then I was in serious jeopardy of losing my life or getting beat down for some serious, serious injuries, because I have had to participate in doing that to other brothers myself, on the street and in prison.

(J.A. 553-54.) Thus, Howe essentially claimed that he had to attack inmate Roberts because Roberts was a "snitch," and the rules of his gang required him to either attack Roberts or be attacked himself by a member of his own gang.

Howe additionally asserted that he could not request official protection for fear of reprisals from his own gang. Describing the potential consequences of requesting police protection, Howe testified:

> As soon as I check in and go into protection, I might survive for a little while until they transfer me to the next prison. And when I get to the next prison, I will be dealt with.
> My job at the Latin Kings at Big Sandy, I was the fifth crown, I was the secretary. It was my job to write other prisons and other secretaries and keep up on the flow of people moving from one joint to another.
> So if you left Big Sandy in bad standing, if you were in violation for some reason and you got away from us, we would send a message to the other institution. And as soon as you walk out on the line you will be dealt with . . .

(J.A. 554.) Thus, according to Howe, seeking protection from prison authorities would only provide temporary protection from fellow gang members. He knew this because he and his fellow "Latin Kings" had, in the past, personally enforced Latin King rules by exacting revenge on other gang members who tried to seek police protection.

## III.

Howe appeals the district court's decision to preclude his proffered defense of duress, arguing that he presented sufficient evidence to justify introducing a coercion or duress defense at trial. This Court reviews *de novo* "[w]hether a defendant has established a *prima facie* case of duress" because it is a question of law. *United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005). Where the defendant's evidence is insufficient as a matter of law, the district court may properly exclude such

evidence. *Id.*

> In order to establish a *prima facie* case of duress, a defendant must show:
>
> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
> (2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
> (3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
> (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; [and]
> (5) that defendant did not maintain the illegal conduct any longer than absolutely necessary.

*Johnson*, 416 F.3d at 468 (quoting *United States v. Riffe*, 28 F.3d 565, 569 (6th Cir. 1994)) (emphasis removed). The defense of duress is available only in "rare situations" and "should be construed very narrowly." *United States v. Singleton*, 902 F.2d 471, 472-73 (6th Cir. 1990).

The first element requires that "there be an immediate threat of death or serious bodily harm which requires the defendant to commit the criminal act." *United States v. Campbell*, 675 F.2d 815, 821 (6th Cir. 1982). In arguing that he provided sufficient evidence of an immediate threat, Howe claims he would have been attacked by fellow gang members if he did not retaliate against Roberts, the alleged "snitch." This Court, however, has previously held that the defense of duress is unavailable "to a person who contends that he has joined either voluntarily or under compulsion a criminal organization . . . , even if he asserts that he acted under the orders of that organization in fear of his life." *Campbell*, 675 F.2d at 820 (finding no imminent or immediate threat where defendants were members of a prisoners' organization that directed them to commit a robbery under pain of death). Howe, who voluntarily joined the Latin Kings, is similarly ineligible to assert a

defense of duress.

Moreover, the testimony that Howe offered did not identify any specific threats made to Howe. Rather, the testimony was far more generalized, focusing on a pervasive atmosphere of violence within the prison, the presence of gangs within Big Sandy, and the requirement that gang members seek retribution against a "snitch." Where a defendant "supports his request for a necessity instruction only with speculation and conjecture," the defendant has not established the presence of an imminent or immediate threat necessary for a defense of duress. *United States v. Hargrove*, 416 F.3d 486, 491 (6th Cir. 2005) (Defendant did not face an immediate or imminent threat when defendant was approached by a man who told him that "he wasn't supposed to be" in the neighborhood and asked him, "Do you want a drive-by or your family to go down or something?"); *see also United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990) (finding that defendant's "proposed duress defense borders on the frivolous" where he "failed to present evidence of more than a generalized fear, based on the reputation of the Colombian cartels," "did not identify any . . . specific threats," and "did not proffer any evidence that he had been in immediate danger.").

Howe, however, argues that the unique circumstances of prison life merit special consideration. Previously, this Court has found sufficient evidence of threats of immediate harm in the prison context where gang members threatened to kill the defendant in order to force him to carry out an illegal act. *Riffe*, 28 F.3d at 568-70 (abrogated on other grounds by *Dixon v. United States*, 548 U.S. 1, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006)). In that case, a defense witness "testified that he saw and heard gang members threatening [defendant] with knives over the smuggling of marijuana . . . and that [defendant] was reasonably afraid for his life." *Id.* at 568. In the present

instance, however, no specific threat was ever made against Howe. *Riffe*, therefore, is distinguishable because, here, Howe never alleged having received a specific threat from any gang members that compelled him to stab his fellow inmate. If no one threatened Howe, he could not have faced an imminent threat of death or serious bodily harm. In short, the alleged "threat" was far too amorphous to qualify as "imminent and immediate."

The opinions of sister circuits are also instructive in evaluating claims of imminent and immediate threats within the prison context. The Seventh Circuit, in *United States v. Sahakian*, 453 F.3d 905, 909 (7th Cir. 2006), found that "the word 'imminent' should be construed narrowly in the prison context," requiring the prisoner to "establish that he experienced something more than a 'generalized fear of attack by some unknown or unspecified assailant at some unknown time in the future.'" (quoting *United States v. Tokash*, 282 F.3d 962, 971, 966 (7th Cir. 2002)). In finding that the defendant was not entitled to assert a defense of duress, the court opined:

> To hold that [defendant] was faced with an imminent threat based on a rumor he heard from some unknown and unidentified individual would essentially require that each and every inmate who has allegedly received a vague unsubstantiated threat be allowed to arm himself, threatening the safety of guards as well as other prisoners; this would be less than reasonable.

*Sahakian*, 453 F.3d at 910. The First Circuit, also applying a narrow definition of "imminent," found that a defendant, who was told by another inmate that he would "crack open [the defendant's] head," was not entitled to present a defense of duress where the defendant then made his attack in the prison recreational yard after there had been a cooling off period between the alleged threat and the assault. *United States v. Bello*, 194 F.3d 18, 21 (1st Cir. 1999).

The case at bar is similar to *Sahakian* and *Bello* because Howe, like the inmate in *Sahakian*,

was not specifically threatened and, like the situation in *Bello*, there was a cooling off period between the time when Howe was 'provoked' by his fellow inmate and when Howe actually attacked him. Both the generalized nature of the alleged threat and the ample cooling off time negates Howe's assertion that he was under an immediate and imminent threat of death or serious bodily harm.

Moreover, as a policy matter, it would be troubling to allow gang rules to supercede legal rules, particularly where no specific threats have been made. Prisons are undoubtedly dangerous places, but "[t]he consequences of such a concession would only serve to exacerbate the already violent environment at . . . federal prisons or places of confinement." *Sahakian*, 453 F.3d at 910.

In order for Howe to present the defense of duress, Howe was required to "introduce evidence on all elements of the defense." *Campbell*, 675 F.2d at 821. Because Howe failed to establish an imminent threat of bodily harm, the district court was "not obligated to allow the evidence to remain for consideration by the jury." *Id.* This Court therefore affirms the district court's decision to preclude evidence of duress on the grounds that Howe did not establish an immediate, imminent threat of serious bodily harm.

IV.

Howe additionally appeals the district court's denial of his post-trial Motion for Acquittal or in the Alternative for New Trial. In his appeal, Howe argues that he is entitled to acquittal or a new trial because "[t]he District Court committed reversible error, and abused its discretion when defendant submitted some evidence, however weak, to support his defense" of duress.

In reviewing a denial of a motion for acquittal, this Court views "the evidence in the light

most favorable to the prosecution." *United States v. Clay*, 346 F.3d 173, 176 (6th Cir. 2003) (quoting *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996)). This Court must affirm the district court's decision if "*any* rational trier of fact could have found the essential elements of the crime." *Id.* (quoting *Jones*, 102 F.3d at 807) (emphasis in original).

Howe bases his argument for acquittal on the district court's exclusion of evidence relating to his defense of duress. Because, as discussed above, the district court did not err in excluding such evidence, the district court also did not err in denying Howe's motion for acquittal or a new trial.

V.

Howe's final argument for reversal is that the district court erred in refusing to adopt his supplemental jury instructions requiring specific intent to do bodily harm as to Counts 3 and 4 of the indictment, which charged Howe with: (1) using a dangerous weapon to forcibly assault, resist, oppose, impede, intimidate or interfere with Officer Adams in violation of 18 U.S.C. § 111(a), and (2) threatening to murder Officer Adams in violation of 18 U.S.C. § 115(a)(1)(B).

This Court reviews the refusal to issue jury instructions requested by a party for abuse of discretion. *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 387 (6th Cir. 2008) (citing *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 901 (6th Cir. 2004)). "A district court's refusal to give a jury instruction constitutes reversible error if (1) the omitted instruction is a correct statement of the law, (2) the instruction is not substantially covered by other delivered charges, and (3) the failure to give the instruction impairs the requesting party's theory of the case." *Taylor*, 517 F.3d at 387 (quoting *Tompkin*, 362 F.3d at 901).

Howe waived his claim based on the district court's refusal to issue his requested instructions

because he failed to develop his argument. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)). Howe devoted a mere three sentences to this claim, stating:

> Defendant also submitted supplemental Instructions (R.116 Supplemental Request for Jury Instructions, Apx. v.1 pg. 152) that requested language be added requiring specific intent to do bodily harm as to Counts III and IV. The Court's instructions (R.120 Court's Jury Instructions, Apx. v.1 pg. 193-231) did not have such language. As a result, Appellant was prejudiced and a new trial is warranted.

(Appellant's Brief at 40.) Howe does not argue that the requested instructions are a correct statement of the law, he does not claim that the requested instructions were not substantially covered by other delivered charges, nor does he explain exactly how he was prejudiced by the district court's instructions.

Indeed, it is difficult to imagine exactly what "prejudice" resulted from the district court's refusal to issue the requested instructions. Howe was acquitted on both Counts 3 and 4, with the jury finding him guilty of the lesser included offense of Count 3 of "forcibly assaulting, resisting, opposing, impeding, intimidating or interfering with Officer Adams." *Howe*, 2007 WL 1248050, at *1. As to Howe's request to add language requiring "specific intent," this Court has already held that a conviction under 18 U.S.C. § 111(a)(1) (Count 3) does not require specific intent. *United States v. Kimes*, 246 F.3d 800, 808 (6th Cir. 2001) ("[T]he crime established in 18 U.S.C. § 111(a) is a general intent crime . . ."). Viewing the district court's instructions, as we must, under an abuse of discretion standard, it is not evident that the jury instructions failed to "adequately inform the jury of relevant considerations and provide a basis in law for aiding the jury to reach its decision." *King*

*v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000).  Thus, we affirm the district court's denial of

Howe's supplemental instructions.

VI.

For the foregoing reasons, we **AFFIRM** the decision of the district court.