NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0304n.06

No. 09-5791

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**May 10, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GERALD DWIGHT FONVILLE, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: McKEAGUE and STRANCH, Circuit Judges; and MAYS, District Judge.[*]

**SAMUEL H. MAYS, JR., District Judge.** Defendant Gerald Dwight Fonville ("Fonville"),
a federal prisoner, appeals his conviction and sentence for forcibly assaulting Shannon Collins
("Collins"), a prison official, in violation of 18 U.S.C. § 111. Fonville argues that three errors
require us to overturn his conviction and sentence and order a new trial: (1) the district court's denial
of his motion for appointment of new counsel, (2) the district court's admission into evidence of
statements by Fonville before and after the assault, and (3) the district court's exclusion of his
testimony about the significance of the words "snitch" and "rat" in prison. For the following
reasons, we AFFIRM Fonville's conviction and sentence.

---

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of
Tennessee, sitting by designation.

**I.**

On June 24, 2008, Fonville assaulted Collins at the federal prison in Manchester, Kentucky. At trial, Fonville did not contest that fact. As the only defense witness, Fonville sought to establish two affirmative defenses: self-defense, because he believed that Collins was about to strike him before the assault, and justification, because Collins had called him a "rat" and a "snitch" before the assault. Two of the three arguments Fonville presents on appeal address the district court's evidentiary rulings, which he claims were relevant to his affirmative defenses.

Collins was one of Fonville's supervisors at the prison's dining hall. On June 23, 2008, Collins informed inmates working in the dining hall that he would begin enforcing the prison's policy requiring inmates to stay until the end of their assigned shifts. Collins' statement upset the inmates, and a group of twenty-five to thirty of them surrounded him, talking to him loudly. After the inmates had ignored two commands to sit down, Collins commanded them "to go sit their asses down," and they complied. Later, Fonville and four other inmates went to a prison lieutenant's office to complain about Collins' use of profanity.

The next day, June 24, 2008, Fonville arrived for his shift at the dining hall, and Collins spoke to the inmates working there. Collins said that some of them had complained about his profanity to a lieutenant and that he would now enforce all of the prison's rules, such as filing incident reports against inmates reading newspapers and magazines during their shifts and leaving their work areas. Fonville testified that he did not become angry with Collins or intend to attack Collins at that point.

According to Fonville, later in his shift, the inmates prepared for a roll call at around 4:00 p.m. During that roll call, Collins addressed the inmates and, looking directly at Fonville, apologized for telling the inmates "don't so much as fart" during the roll call because "certain inmates" would "snitch[]" on him. Collins called the inmates' names and, when he called Fonville's name, Fonville approached another prison official and stated his name and registration number pursuant to the prison's procedure. Fonville claims that he then attempted to walk past Collins and Collins called him "a snitch." Fonville allegedly backed up and said, "What'd you say?" Fonville testified that, at that point, Collins "balled his fist up" and, in response, Fonville assaulted him. As a result of Fonville's assault, Collins suffered bite marks, bruises, and a broken nose, and had to have surgery to repair his nose.

Fonville testified that he did not plan to assault Collins when the shift began. He claimed that he merely reacted to Collins' clenching his fist and used no more force than necessary to protect himself. On cross-examination, Fonville stated that he did not believe Collins had acted fairly the day before the incident in telling inmates to sit down, but had no animosity toward Collins. Fonville reiterated his testimony that he had attacked Collins because Collins was about to attack him.

While Fonville was on the witness stand, the prosecutor for the United States of America (the "Government") offered two letters into evidence. The first was a letter Fonville had sent to a congressperson on May 13, 2008. In it, Fonville wrote in relevant part:

> Now, if we act out in aggressive behavior, we will be punished from the top administration to the officers. They all talk to us like they are tough. And being from the inner city, we black men respond to such behavior from white men with violence. All the Klan, KKK did was to trade their white robes in for a Bureau of Prisons uniform.

Trial counsel for Fonville objected to admission of the letter, arguing that it was irrelevant because it had nothing to do with the assault. The district court overruled Fonville's objection and allowed the letter into evidence, reasoning that Fonville "ha[d] opened the door" to questions about whether the only reason he had assaulted Collins was that he felt physically threatened. The prosecutor then had Fonville read the portion of the letter quoted above to the jury. She asked Fonville whether it was true that "in this letter basically what you're stating to your congressman is that you believe if people act tough to you, that you are going to have to respond with violence[.]" Fonville responded, "Yes."

The prosecutor then offered a second letter into evidence. In it, Fonville, writing to his sister on July 14, 2008, said that "it's not good" for inmates to be called rats or snitches and that "I had no choice but to handle my business" with Collins. Trial counsel for Fonville objected, but the district court overruled the objection. The prosecutor had Fonville read those statements in the letter to the jury. Fonville admitted that, in the letter, he did not mention anything about assaulting Collins to protect himself.

On redirect, Fonville's counsel attempted to ask Fonville about the significance of the word "snitch" to a prisoner. The prosecutor objected, arguing that her cross-examination had not opened the door to testimony about why the name "snitch" scared Fonville. The district court agreed and sustained her objection. Fonville's counsel then asked further questions about the assault, and Fonville reiterated that he had assaulted Collins to prevent Collins from attacking him and had used only the amount of force necessary to stop Collins. Fonville's testimony ended, and the defense rested.

During rebuttal, the prosecutor argued that Fonville's testimony had opened the door for the Government to offer into evidence a video of Fonville after the assault. The district court overruled Fonville's objection and allowed the prosecutor to call a witness to admit the video.

The prosecutor called Preston Napier ("Napier"), an officer at the federal prison in Manchester, Kentucky. Napier testified that, when he heard a call about the assault over the radio, he went to the scene where the assault had occurred. Fonville had been taken to the special housing unit, and Collins had been taken to the medical office. Napier was instructed to go to the special housing unit. When he arrived, a lieutenant directed him to set up a camera and videotape Fonville. The prison's policy is to videotape inmates moved to the special housing unit after assaulting prison officials to protect inmates from actual retaliation and to protect the prison from allegations of retaliation. The inmates continue to be videotaped until they are transferred to another federal prison.

While recording Fonville, Napier heard him call to prisoners locked in other cells in the special housing unit, saying that he wished he had had a knife when he assaulted Collins and that, "If I'd have got him like I wanted to, I'd have killed him." A videotape on which Fonville made those comments was played to the jury.

After the prosecutor and Fonville's trial counsel had made their closing arguments, the jury deliberated and returned a verdict of guilty. The district court sentenced Fonville to 37 months' imprisonment to run consecutively to any prior state or federal sentence.

Fonville also argues on appeal that the district court erred when it declined to substitute his trial counsel. On August 7, 2008, a grand jury indicted Fonville for forcibly assaulting Collins. Trial

counsel was appointed on September 9, 2008. On December 29, 2008, Fonville filed a pro se motion

requesting new counsel. In his motion, Fonville stated that his counsel had committed five errors:

(1) [He] has failed to obtain the statement of the only other person who witnessed this incident;

(2) he has failed to interview either of the two witnesses: (a) who could testify as to the alleged victim's propensity to insult African-American inmates, and (b) whose identities are known to the defendant;

(3) he has failed to obtain a transcript of the grand jury proceeding which resulted in the issuance of the indictment;

(4) he failed to move for a dismissal of this litigation under the Speedy Trial Act, even though the government did not produce any discovery until October 17, 2008 - which was only ten days before the trial was originally scheduled to commence[;] and

(5) he has failed to attempt to obtain a copy of a letter from [the warden] to Congressman William Lacy Clay which would be highly relevant to this litigation.

The district court addressed Fonville's motion at a pretrial conference on January 7, 2009.

At the pretrial conference, the district court allowed Fonville's counsel to respond. Counsel

stated that, "[t]o be perfectly frank and honest, I don't think he believes in me. I think partly because

of my age I think that maybe that he doesn't have the confidence in me that he might would [sic] an

older attorney." Counsel explained that he had requested the documents Fonville wanted from the

prosecutor, had obtained them the day of the pretrial conference, and had just gone over them with

Fonville. Counsel also said that he had spent quite a lot of time with Fonville and had spoken with

Fonville as often as he felt Fonville believed they needed to talk.

The district court then told Fonville that "my job . . . is to determine whether the

communication between you and your lawyer has broken down to the point that you []effectively

don't have a lawyer. In other words, you're not receiving the right to counsel because there's such

a breakdown in communication." Fonville's counsel responded that he believed he could continue to represent Fonville and that he did not believe Fonville had any animosity toward him, although there was an "almost total" lack of communication between them. Counsel also stated that he had no animosity toward Fonville.

The district court offered the prosecutor the opportunity to state the Government's position. The prosecutor said that she did not believe Fonville's complaints in his motion warranted new counsel because Fonville sought documents that he had no right to see at that point or that the Government did not yet have in its possession. She also said that the Government had provided the letters Fonville had requested to his attorney.

The district court had a colloquy with Fonville about the quality of communication between him and his counsel:

> [The Court:] So without addressing the content of that communication, I would like for you to address the quality, if you will, of that communication.
>
> The Defendant: First of all, I have no problem with his age, right, I'm just ten years older than him, all right. And my whole—my whole thing was the information that he got now, I've been trying to get him to get from day one.
>
> The Court: But he's got it now?
>
> The Defendant: Yeah, he's got it now.
>
> The Court: Okay.
>
> . . .
>
> The Court: Okay. We may have a disagreement about [whether the Government had an obligation to turn over certain information]. But you are agreeing that you now have the information?

The Defendant: Yes, I do.

The Court: Okay. Anything else you want to put on the record with regard to the communication between you and [your counsel]?

The Defendant: No, no. We—like I said, there's no animosity on my behalf toward him, right. It's just the fact that in 1990, when I was sentenced, I feel that the lawyer that I had, I didn't know anything about the law—the first thing about the law, so I depended upon his advice, which got me 28 years. All right. No kind of defense at all. So I'm looking at it as time go on and was getting ready for trial, [my counsel] hasn't made no effort to get the information that I asked.

. . .

The Court: Okay. And just so I'm clear, is that information now in the works or been provided or it's still not—

The Defendant: Well, [my counsel] have [sic] it right here.

The Court: Okay. All right. Well, anything else you want to say on the record?

The Defendant: Regarding this?

The Court: Regarding this issue.

The Defendant: No.

After the colloquy, the district court concluded that there had not been a total breakdown in communication between Fonville and his counsel that would prevent an adequate defense. Based on that conclusion, the court denied Fonville's motion for new counsel.

Fonville's trial began on January 20, 2009, approximately two weeks after the pretrial conference. After the district court had sentenced Fonville on July 6, 2009, he appealed. We granted Fonville's trial counsel's motion to withdraw on July 9, 2009, and appointed new counsel for Fonville's appeal.

**II.**

Under 18 U.S.C. § 3231, the district court had subject matter jurisdiction over Fonville's case because Fonville was indicted by a federal grand jury for violating 18 U.S.C. § 111. *See* 18 U.S.C. § 3231; *United States v. Kaminski*, 501 F.3d 655, 665 (6th Cir. 2007). We have appellate jurisdiction over Fonville's appeal of his conviction and sentence under 28 U.S.C. § 1291. *See* 28 U.S.C. § 1291; *United States v. Owens*, 426 F.3d 800, 804 (6th Cir. 2005); *United States v. Camejo*, 333 F.3d 669, 671 (6th Cir. 2003).

"We will reverse a district court's decision regarding an indigent defendant's motion for substitute counsel only if the district court has abused its discretion." *United States v. Saldivar-Trujillo*, 380 F.3d 274, 277 (6th Cir. 2004) (citing *United States v. Iles*, 906 F.2d 1122, 1130 n.8 (6th Cir. 1990)). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *United States v. Chambers*, 441 F.3d 438, 446 (6th Cir. 2006) (quoting *Tucker v. City of Fairfield*, 398 F.3d 457, 461 (6th Cir. 2005)) (internal quotation marks omitted).

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003). That standard of review applies to appeals of a district court's decision to admit or exclude evidence. *See United States v. Perry*, 438 F.3d 642, 647 (6th Cir. 2006) (citing *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001)). "An abuse of discretion will be found upon a 'definite and firm conviction that the court below committed a clear error of

9

judgment in the conclusion it reached upon a weighing of the relevant factors.'" *United States v. Davis*, 577 F.3d 660, 666 (6th Cir. 2009) (quoting *Schreane*, 331 F.3d at 564).

Fonville's appeal presents three issues. The first is whether the district court committed reversible error by denying his motion to substitute counsel. The second is whether the district court committed reversible error by admitting evidence of Fonville's statements before and after he assaulted Collins. The third is whether the district court committed reversible error by excluding evidence of the significance of the words "snitch" and "rat" in prison.

## A.

Fonville argues on appeal that the district court erred by denying his motion to substitute counsel because the judge did not ask Fonville if his dissatisfaction had disappeared after his counsel produced the information requested and did not probe whether Fonville's dissatisfaction was justifiable. The Government argues that the district court's inquiry was adequate and that all of the factors we consider in reviewing denials of motions to substitute counsel support the district court's denial of Fonville's motion. Fonville replies that the district court also erred by failing to inquire into his core argument: his trial counsel's zeal and industry in preparing his defense.

"An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *Saldivar-Trujillo*, 380 F.3d at 277 (quoting *Iles*, 906 F.2d at 1130). When a criminal defendant expresses dissatisfaction with counsel, the district court must inquire into the defendant's complaint to determine whether good cause exists to substitute counsel. *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009)

10

(citing *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008)). The following factors guide our determination about whether a district court abused its discretion in refusing to substitute counsel:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*Id.* (quoting *Mack*, 258 F.3d at 556). "[W]hen the granting of the defendant's request would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *Id.* at 467 (quoting *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008) (alteration in original)).

Here, all four factors favor affirming the denial of Fonville's motion. When Fonville sought to substitute counsel on December 29, 2008, his trial was to begin on January 20, 2009. In *Chambers*, we found that a defendant's request for new counsel approximately one and a half months before his scheduled trial was not timely. *See Chambers*, 441 F.3d at 447. Because Fonville requested new counsel less than a month and a half before his trial, his request was not timely. *See id.* Therefore, the first factor weighs against Fonville. *See Vasquez*, 560 F.3d at 466-67.

The district court conducted an adequate inquiry into Fonville's dissatisfaction with his counsel because the court allowed all of the interested parties to present their respective evidence and arguments. *See Saldivar-Trujillo*, 380 F.3d at 278. Contrary to Fonville's argument that the district court did not adequately inquire into his dissatisfaction with his attorney's industry and zeal, Fonville's motion and his colloquy with the district court judge reveal that his primary source of

11

dissatisfaction was his counsel's failure to obtain evidence. Fonville stated during the pretrial conference that his counsel had obtained the evidence he wanted, alleviating his dissatisfaction. Fonville's counsel stated that, although there was an "almost total" lack of communication between him and Fonville, he believed he could continue to represent Fonville and that he did not believe that Fonville had any animosity toward him. During the colloquy between Fonville and the judge, Fonville confirmed that he had no animosity toward his counsel and had no problem beyond the delay in obtaining evidence. Because the district court inquired into whether Fonville's counsel had obtained the information Fonville wanted and Fonville said that he had, the district court conducted a sufficient inquiry. Therefore, the second factor weighs against Fonville. *See Vasquez*, 560 F.3d at 467; *see also Chambers*, 441 F.3d at 447.

The conflict between Fonville and his counsel did not result in a total lack of communication preventing an adequate defense. Here, the conflict was over Fonville's dissatisfaction with his counsel's failure to obtain evidence, but Fonville admitted that his counsel had obtained the evidence he wanted at the pretrial conference. Fonville also said that he had no animosity toward his counsel. Counsel confirmed that he had no animosity toward Fonville. Based on this information, the district court correctly determined that there was not a total breakdown in communication and that Fonville and his counsel were willing to work together in Fonville's defense. Therefore, the third factor weighs against Fonville. *See Vasquez*, 560 F.3d at 467-68; *see also Chambers*, 441 F.3d at 447.

The public's interest in the prompt and efficient administration of justice supports the district court's denial of Fonville's motion. Because of Fonville's delay in requesting new counsel, it would

have been difficult for a new attorney to prepare Fonville's defense adequately in time for trial. Given the weakness of Fonville's motion based on the first three factors, the interest of the people of the United States in the prompt and efficient administration of criminal justice outweighed Fonville's request for new counsel. Therefore, the fourth factor weighs against Fonville. *See Vasquez*, 560 F.3d at 468; *see also Chambers*, 441 F.3d at 447-48.

Granting Fonville's request would almost certainly have required a last-minute continuance because the pretrial conference at which the district court inquired into Fonville's dissatisfaction was less than two weeks before his trial date. Therefore, we give a high degree of deference to the district court's refusal to substitute counsel. *See Vasquez*, 560 F.3d at 468.

Because none of the four factors favors concluding that the district court abused its discretion in denying Fonville's motion for new counsel, *see Chambers*, 441 F.3d at 448, we AFFIRM the district court's denial of Fonville's motion for new counsel.

## B.

Fonville argues on appeal that the district court erred by admitting three pieces of evidence: (1) his letter to a congressperson before the assault, (2) his letter to his sister after the assault, and (3) a video of him after the assault. The Government argues that the court did not abuse its discretion by admitting this evidence. (*See* Government's Br. 12-20.)

## 1.

Fonville wrote the first letter at issue to a congressperson on May 13, 2008, a month before the assault. He said in relevant part:

> Now, if we act out in aggressive behavior, we will be punished from the top administration to the officers. They all talk to us like they are tough. And being from the inner city, we black men respond to such behavior from white men with violence. All the Klan, KKK did was to trade their white robes in for a Bureau of Prisons uniform.

Fonville objected, but the district court overruled his objection and admitted the letter into evidence. The prosecutor then had Fonville read the quoted portion of the letter to the jury.

"Rule 613(b) provides that the impeaching party may produce 'extrinsic evidence of a prior inconsistent statement' if 'the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon . . . .'" *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 722 (6th Cir. 2005) (quoting Fed. R. Evid. 613(b)). The rule applies when a witness's statements before trial and at trial are irreconcilable:

> In our view, Rule 613(b) applies when two statements, one made at trial and one made previously, are irreconcilably at odds. In such an event, the cross-examiner is permitted to show the discrepancy by extrinsic evidence if necessary—not to demonstrate which of the two is true but, rather, to show that the two do not jibe (thus calling the declarant's credibility into question).

*United States v. Winchenbach*, 197 F.3d 548, 558 (1st Cir. 1999) (citations omitted); *see also United States v. Lester*, 238 F. App'x 80, 83 (6th Cir. 2007) (per curiam) (explaining that a witness's sworn affidavit directly contradicting her testimony at trial would have been admissible had the government sought to introduce it to impeach her credibility); *United States v. Foster*, 376 F.3d 577, 591-92 (6th Cir. 2004) (concluding that a witness was properly impeached by a prior statement because that statement directly contradicted the statement she made while testifying).

14

Here, Fonville testified that he had no animosity toward Collins after Collins told inmates "to go sit their asses down" the day before the assault and did not plan to attack Collins on the day of the assault. That testimony was "irreconcilably at odds" with the statement in the letter suggesting that Fonville would act violently toward Caucasian prison officials who acted "tough" around him. Fonville had the opportunity to explain the letter's contents, and the court offered the prosecutor and Fonville's counsel the opportunity to interrogate Fonville. Therefore, the letter was admissible to call Fonville's credibility as a witness into question, particularly about whether he assaulted Collins in self-defense. *See Winchenbach*, 197 F.3d at 558.

Fonville's argument that the district court erred in admitting the letter because it is improper character evidence is incorrect. The letter was not admitted to show that Fonville had the character trait of violence. It was admitted to impeach Fonville's testimony that he had no animosity toward Collins and assaulted Collins in self-defense. Therefore, the district court did not abuse its discretion by admitting the first letter.

**2.**

In the second letter at issue, Fonville wrote to his sister on July 14, 2008, that "it's not good" for inmates to be called rats or snitches and that "I had no choice but to handle my business" with Collins. Before the prosecutor offered that letter, Fonville testified that he had not planned to assault Collins when he began his shift at the prison dining hall and that he acted in self-defense. Fonville did not state in the letter that Collins had physically threatened him.

"Prior statements . . . that omit details included in a witness's trial testimony are inconsistent if it would have been 'natural' for the witness to include the details in the earlier statement." *United*

15

*States v. Meserve*, 271 F.3d 314, 320-21 (1st Cir. 2001) (citing *United States v. Stock*, 948 F.2d 1299, 1301 (D.C. Cir. 1991)); *see also Moylan v. Meadow Club, Inc.*, 979 F.2d 1246, 1249 (7th Cir. 1992) ("The method of impeachment in this case was impeachment by omission, a well-established, if slightly uncommon, subcategory of impeachment by contradiction. The theory of impeachment by omission is that 'if [a] former statement fails to mention a material circumstance presently testified to, which it would have been natural to mention in the prior statement, the prior statement is sufficiently inconsistent' to be admitted to impeach the present testimony." (quoting 1 John W. Strong, *McCormick on Evidence* § 34, at 114-15 (4th ed. 1992))). This reasoning derives from the Supreme Court case *Jenkins v. Anderson*, 447 U.S. 231 (1980). *Jenkins*, 447 U.S. at 239 ("Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted.") (citation omitted).

Here, it would have been "natural" to include in the letter, which described Fonville's reasons for assaulting Collins, that Collins had physically threatened Fonville if Collins had in fact done so. Because Fonville did not mention any threat by Collins, the letter was admissible to impeach his testimony that he only acted in self-defense. *See Meserve*, 271 F.3d at 320-21; *Moylan*, 979 F.2d at 1249. The letter also directly contradicted Fonville's testimony that Collins' telling inmates "to go sit their asses down" and calling Fonville a snitch did not motivate Fonville to attack him. Therefore, the letter was admissible to impeach Fonville's testimony. *See Lester*, 238 F. App'x at 83; *Rush*, 399 F.3d at 722; *Foster*, 376 F.3d at 591-92; *Winchenbach*, 197 F.3d at 558.

Contrary to Fonville's argument, the letter was not admitted as character evidence. As the district court stated, it was admitted to impeach Fonville's testimony. The district court did not abuse its discretion by admitting the second letter.

**3.**

In the third piece of evidence at issue, Fonville stated on a video after the assault that he wished he had had a knife when he assaulted Collins and that, "If I'd have got him like I wanted to, I'd have killed him." Those statements are admissible as prior inconsistent statements for the purpose of impeachment. They are irreconcilably at odds with Fonville's testimony that he acted in self-defense when he assaulted Collins and only used the amount of force necessary to defend himself. Fonville had an opportunity to explain the statements. Therefore, those statements were admissible to impeach Fonville's credibility. *See Lester*, 238 F. App'x at 83; *Foster*, 376 F.3d at 591-92; *Winchenbach*, 197 F.3d at 558. The district court did not abuse its discretion by admitting the video of Fonville's statements after the assault.

**C.**

Fonville argues on appeal that the district court erred when it sustained the prosecutor's objection to Fonville's testimony about the significance of the words "snitch" and "rat" in prison. Fonville argues that his testimony was admissible to rebut the Government's evidence of Fonville's state of mind by showing that fear of being labeled a "snitch" and a "rat" motivated the assault. The Government responds that the court properly excluded the testimony because it was legally insufficient to support a justification defense.

To be entitled to a jury instruction on a defense of justification, a defendant must make a

17

prima facie showing on five elements:

>  (1) that defendant was under an *unlawful and present, imminent, and impending threat* of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
>  (2) that defendant *had not recklessly or negligently placed himself in a situation* in which it was probable that he would be forced to choose the criminal conduct;
>
>  (3) that defendant had *no reasonable, legal alternative to violating the law*, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
>  (4) that a *direct causal relationship* may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; . . . and
>
>  (5) [that the defendant] did not *maintain the illegal conduct any longer than absolutely necessary.*

*United States v. Kemp*, 546 F.3d 759, 765 (6th Cir. 2008) (quoting *United States v. Ridner*, 512 F.3d 846, 850 (6th Cir. 2008)) (alterations in original). District courts should exclude evidence insufficient as a matter of law to support a justification defense. *See United States v. Grainger*, 239 F. App'x 188, 190 (6th Cir. 2007) (citing *United States v. Newcomb*, 6 F.3d 1129, 1133 (6th Cir. 1993)); *United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005) (citing *United States v. Contento-Pachon*, 723 F.2d 691, 693 (9th Cir. 1984)).

Here, Fonville's theory is that evidence of prison culture would show that Collins' use of the words "snitch" and "rat" placed Fonville in imminent danger of physical violence and that Fonville had no reasonable alternative to assaulting Collins on the spot. In *United States v. Howe*, 289 F. App'x 74 (6th Cir. 2008), we concluded that, when a defendant claimed he had to attack an inmate because that inmate was a "snitch" and the rules of his gang required him to attack the inmate or be attacked himself by gang members, the defendant failed to establish an imminent threat of bodily

harm and the district court properly precluded the defendant from presenting evidence of duress. *Howe*, 289 F. App'x at 76-79. We reasoned that testimony about the pervasive atmosphere of violence within the prison, the presence of gangs within the prison, and the requirement that gang members attack "snitches" was insufficient to demonstrate that a defendant faced an imminent threat of bodily harm. *See id.* at 78-79.

Fonville's testimony that the culture of the prison required him to attack Collins or be attacked himself would have been insufficient as a matter of law to establish that he was under a present, imminent, and impending threat of violence. *See id.* at 77-79; *see also United States v. Sahakian*, 453 F.3d 905, 910 (7th Cir. 2006) ("To hold that [defendant] was faced with an imminent threat based on a rumor he heard from some unknown and unidentified individual would essentially require that each and every inmate who has allegedly received a vague unsubstantiated threat be allowed to arm himself, threatening the safety of guards as well as other prisoners; this would be less than reasonable.") (citation omitted); *United States v. Holt*, 79 F.3d 14, 15-16 (4th Cir. 1996) (per curiam) (concluding that, where an inmate claimed that he possessed a knife after three unknown inmates attacked him in a dormitory and dropped the knife, the inmate's "generalized fear of a repeat attack cannot qualify as an imminent threat of death or injury").

Because Fonville's testimony would have been insufficient to support a jury instruction on the justification defense, the district court properly excluded his testimony about the significance of the words "snitch" and "rat" in prison. *See Johnson*, 416 F.3d at 468. Therefore, the district court did not abuse its discretion by excluding Fonville's testimony.

19

## III.

For the foregoing reasons, we AFFIRM Fonville's conviction and sentence.